Rollins, Surr.
The attorney who acted for Isaac Fernbaclier in the proceeding for revocation of letters testamentary held by the executrix and executors herein, and who subsequently instituted the proceedings now sought to be discontinued, should be secured such compensation as he is justly entitled to receive before the decree revoking letters can be vacated or such subsequent proceedings allowed to be discontinued.
Whether the agreement which' such attorney sets up as the basis of his claim for compensation was executed by his client under such circumstances as to make it binding upon him, and whether the settlement that the client had undertaken to make with his adversaries was such as he was authorized to make under that agreement, or otherwise, so as to preclude his attorney from prosecuting the pending proceedings, are questions which I shall permit the petitioners herein to submit to a reference, in case an amicable adjustment of this matter cannot be reached by the parties. If the petitioners do not choose to avail themselves of this permission, I must deny their application.
The agreement does not, in my judgment, afford any indication of an intention on the part of the parties thereto, that the client should have absolute discretion to settle or compromise the matters in controversy between himself and these petitioners without regard to the extent of his *5 own just claims or the claims of his attorney, and thus to fix arbitrarily the compensation which his attorney should receive for his services. The provision that the attorney should bo advised of any intended compromise, involves a recognition of his right to be consulted in regard to any settlement contemplated by his client for the purpose of enabling him to protect his own interest. Indeed, in the absence of any express agreement to that effect, he would be entitled to such recognition; and, while his client stood in debt to him' for services in these proceedings., no settlement which should fail to recognize his just claims could lawfully be effected without his knowledge and consent.
The settlement to which Isaac Fernbacher and these petitioners have agreed, is claimed by counsel for the latter to be in accordance with the terms of the contract above referred to. Such is or is not the case accordingly as it shall appear that a proper regard has or has not been shown for the interest of Isaac Fernbacher’s attorney; and the mere circumstance that the client himself has approved of a settlement on the terms disclosed in the moving papers? is by no means conclusive.
It is proper to inquire whether he has acted in good faith, with a proper regard to the extent of his own interest in the estate, to the character and value of the services of liis attorney, to the probability of his success in the pending litigations should they be further prosecuted, to the fruits which success would bring, etc., etc.
These are matters which must be inquired into if the petitioners shall elect to proceed with the reference suggested, and if the agreement between the client and the attorney shall be ascertained to be valid. In case it shall appear, on the other hand, that that agreement is inoperative, the attorney will be remitted to his claim and his lien for such sums as his services are reasonably worth, which sum he will be entitled to receive or have secured to him before the relief which the petitioners ask can be afforded.
II. July, 1886. Motion to confirm referee’s report.
An order having been made in accordance with the foregoing opinion, and a reference had, the referee reported that the contract was made under circumstances which made it a fair and binding agreement to compensate Marks for his services in the proceedings, and that the settlement effected was not such as the petitioner was authorized to make by virtue of the agreement, but was made in violation thereof, and after notice of the agreement, and that the settlement did not sufficiently protect or provide for the satisfaction of the lien which Marks had for his services upon the petitioner’s interest in the estate.
Jacob Maries, for the motion.
Lautevbach & Spingarn, opposed.
Rollins, Sure.
I hold with the referee herein that the agreement upon which Isaac Fernbacher’s attorney bases his claim for compensation is a valid agreement and binding upon Fernbacher.
That agreement is in words following :
[Here follows agreement quoted on p. 2, ante.]
For ascertaining whether, in the settlement which Fernbacher has lately effected or sought to effect, such claims of his attorney as this court is competent to enforce, have been recognized and protected, it is necessary to determine, not the extent and value of all the interest that Fernbacher ever had in this estate, but the extent and value of such interest as he had at the commencement of the accounting proceeding, and as these executors could be held answerable for in that proceeding if it should be prosecuted to a decree.
It is half of the sum thus arrived at, together with taxable costs that this court should secure for Mr. Marks before permitting the discontinuance of the pending proceedings heretofore instituted in behalf of his client.
*7 There must be deducted from the total value of the estate the value of the widow’s life interest.
No portion of the real estate still unsold should be taken into account for the purposes of the present accounting.
The referee, in ascertaining the amount of Isaac Fernbacher’s interest, has included the three pieces of real ■estate at Avenue B, Twentieth street and Forty-third ■street. The executors have never exercised respecting these properties the discretionary power of sale conferred upon them by the will, although Isaac Fernbacher has transferred to his brothers and sister, since the entry of the decree removing the executors, his interest in all this estate, real and personal, and has released to the executors all claims for any liability on their part to him. Such transfer and release have not, in my judgment, changed the conditions of the problem here presented for solution.
In the course of my decision in the proceeding for revocation of the letters of these executors I.used the language following : “In view of the relation which the widow and children of this decedent sustained towards the estate, it was clearly the duty of the executors to collect as soon as practicable the personal property left by decedent. This •duty they owed to the remaindermen who were entitled to be informed of the true nature, condition and value of the assets, and to have such of them as were outstanding realized and recovered.”
I adhere to the view intimated in the words just quoted, that in the accounting proceeding the executors were not bound to account for the unconverted real estate left by the testator; and it is plain that they could not now be required to account for any share in the real estate which any of the parties entitled thereto may have seen fit to alienate. It has been at all times competent for such parties to dispose •of their interests in such real estate despite the power of sale conferred on the executors. Whatever lien Isaac Fernbacher’s attorney may have, as against the interest of his client in such property, this court is powerless to pro *8 tect or make effectual because of its inability to compel the executors to account for" such property.
It was attempted to be shown in the testimony of the executor who was examined in the accounting proceedings that the Twentieth street premises had in fact been sold. That testimony left in uncertainty the exact nature of the transactions claimed to be a sale, but it appears that a mortgage of $9,000 thereon was reduced to $7,000, and that the title to the property at all times remained in the estate, but if it ever passed was immediately, and as a part of the transaction in question, restored.
The Sheriff street property, which formed part of the real estate of the testator at his death, was then subject to-a mortgage of $9,000. The executors were offered $1,000 therefor, subject to such mortgage. This offer was not accepted. The mortgage was afterwards foreclosed and the property sold. It does not appear whether or not there was a surplus, or whether or not the executors were negligent in failing to protect the interest of the estate in the mortgaged property, or whether or not'the estate suffered any loss from this sale, or from any act or omission of the executors, respecting it. The referee was in error in including it among the property for which or for whose value he holds the executors liable. Neither the evidence produced upon this inquiry nor that given in the accounting proceeding, and made a part of the proofs herein, warrants this conclusion. Further evidence may be taken, if Mr. Marks shall so elect, as to whether or not the sale of the premises on foreclosure yielded anything in excess of the mortgage foreclosed. If it did, the amount thereof should be charged against the executors for the purposes of this proceeding.
Among the assets of the estate at the time of the testator’s death were two mortgages, of $7,000 each, on No. 24 Broome street. One of these was a second mortgage and one other a third. A mortgage of $8,000, held by the Mutual Life Insurance Company, was a prior lien upon the •premises. The executors foreclosed the first of the mort *9 gages, owned by the estate, and at the sale which ensued the property was bought by the testator’s widow. There was realized to the estate only $574.90. The insurance company subsequently foreclosed its $8,000 mortgage, but before any sale was made the executors, by arrangement between themselves and the company, and to avoid the possible recovery of a deficiency judgment, procured a purchaser, who took the property and assumed the obligations of the estate respecting it.
A satisfaction piece of the second mortgage seems to have been executed and filed at about the time when this judgment of foreclosure was obtained, and when the transfer just referred to was effected. I think it but fair to infer, in the absence of evidence of the receipt of any other consideration, that the satisfaction piece was executed to carry out the arrangement above indicated. The executors are chargeable, therefore, as regards this transaction, with no more than the amount realized by them in the foreclosure suit. The two mortgages should have been discarded by the referee in determining Isaac Fernbacher’s interest in his father’s estate.
The referee has reckoned as part of said estate the whole amount of the Franklin mortgage ($6,500). This mortgage was satisfied by the executors, but it appears by the uncontradicted evidence of the only one of them who was examined as a witness that $2,500 was paid thereon to the decedent in his lifetime. This evidence is entirely consistent with the subsequent execution of the satisfaction piece by the executors. The mortgage will be considered an asset to the extent of $4,000 only, unless Mr. Marks shall see fit to avail himself of the opportunity which will be offered him of introducing further evidence in the premises.
I make the same disposition of the $3,800 Chapman-Franklin mortgage. It is claimed by the executors that this mortgage, though satisfied after the testator’s death, was, with the exception of $800, paid during his lifetime— I'shall, for the purposes of this proceeding, treat this asset *10 as of the value of $800 only, unless the liability of the executors for a larger sum shall be established by Isaac Fernbacher’s attorney, in the event of his electing to present further evidence in regard thereto.
The executor who satisfied the Marks mortgage for $3,700, testified that the whole amount thereof was paid to the testator in his lifetime. I shall not consider this security as an asset of the estate, unless it is shown to be such by such further evidence as may be presented respecting it.
The Clausen-Schlesinger mortgage for $2,450, held by the estate on property in East Third street, owned by one 'Smith, was a second mortgage and was reduced to $2,350 by the judgment in an action of foreclosure brought by the executors. This mortgage, or rather the judgment recovered upon it, was exchanged for a mortgage of $2,500 on property at Chatham, in this state. The value of this substituted mortgage is stated in the inventory to be $300. The evidence respecting the Clausen-Schlesinger mortgage and the disposition which the executors made of it is too vague and incomplete to enable me to make a satisfactory determination as to the accountability of the executors. I shall require additional evidence respecting it.
In estimating the value of the business left by the 'decedent, it is only necessary for the purposes of this proceeding to determine what must be considered its value as between the executors and Isaac Fernbacher, whose interest ■alone is here the subject of contention. As to whether the sum for which it is claimed to have been disposed of would be just and fair if the liability of the executors to persons other than Isaac Fernbacher were now to be determined, it is needless to consider. The evidence, so far as it affects the parties to the present controversy, seems to show that the business was transferred for the consideration of $10,000, which is as yet wholly, unpaid. Isaac Fernbacher should be treated as having received or been advanced on account of his interest or share in the estate one-third of that amount.
*11 The executors claim that the sum of $891.03 cash on hand was in fact part of the sum of $899.94, being the aggregate amount of the deposits in the Bond Street and the New Amsterdam Savings banks. The evidence does not make it clear to me that this is the fact. I shall allow further proof to be taken, but if none is offered both these sums will be treated as assets of the estate.
The referee was in error in not permitting the executors to show the existence of a judgment for $1,500, which, as they claimed, was at the death of the testator and still continues to be a lien upon his estate. Judgments recovered against a decedent in his lifetime are ordinarily payable primarily out of the personal property and whether or not there is anything in the character of the judgment here in question to take it out of the general rule can only be learned when the evidence concerning it shall have been submitted.
With the modifications above indicated the report of the referee is confirmed.