(29 Misc. Rep. 527.)

In re REGAN.

(Surrogate's Court, New York County. November, 1899.)

1. ATTORNEY AND CLIENT—ATTORNEY'S LIEN—SURROGATE'S DECREE.
    Code Civ. Proc. § 66, providing that from the commencement of an action or special proceeding the attorney who appears for a party has a lien on his client's cause of action, claim, or counterclaim which attaches to a verdict, report, decision, judgment, or final order in his client's favor, and the proceeds thereof, into whosesoever hands they may come, does not apply to a surrogate's decree, rendered before such section was amended, giving such lien in special proceedings.

2. SAME—LIEN AT COMMON LAW.
    An attorney has a lien, irrespective of statute, on the surrogate's decree, for his services rendered in the proceedings resulting in such decree.

3. SAME—LIEN—POWER OF SURROGATE TO GRANT.
    The surrogate's court has jurisdiction to enforce an attorney's lien on its decree when the value of his services has been fixed by judgment, and the decree has been satisfied of record without the attorney's consent.

Application by attorneys for the legatees of John Feehan, deceased, to enforce their lien on a surrogate's decree settling the

final account of James Regan, executor, and directing a fund to be paid to the legatees. Lien allowed.

Adams & Hyde, for petitioners.

Bernard J. Tierney, for executor.

VARNUM, S. In this matter it appears that a decree was entered in December, 1898, judicially settling the accounts of the executor herein, and under the terms of which the accountant was directed to distribute some $7,000 among five legatees under the will, and also pay to them a bill of costs amounting to nearly $600. Shortly afterwards the parties interested came to some settlement, and the decree was satisfied of record. The attorneys for these legatees now make application to set aside the releases and satisfactions made by their clients to the extent of permitting the petitioners to enforce an alleged lien for services on the decree. They show that the executor was personally served with a notice of lien; that the settlement made was brought about without their knowledge; that they thereafter attempted to collect their bill for services without success; that they subsequently brought an action in the city court of the city of New York against their clients, which resulted in a judgment of $2,083.24,—a sum which fixes the value of the services rendered, and the collection of which they now wish to make by enforcing the decree of this court. The answer of the executor does not, in my opinion, throw any doubt on these facts, and the only serious question at issue is whether this court has jurisdiction to entertain the application. The petitioners contend that they are entitled to the relief prayed for by virtue of section 66 of the Code of Civil Procedure, which reads as follows:

"The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come, and the lien cannot be affected by any settlement between the parties before or after judgment or final order. The court, upon the petition of the client or attorney, may determine and enforce the lien."

So much of this section as relates to a lien predicated of a claim in a special proceeding, which lien attaches to a final order, was added by an amendment which went into effect on September 1, 1899. Shortly prior to the passage of this amendment it was held that section 66 did not apply to a special proceeding. In re Lexington Ave., 30 App. Div. 602, 52 N. Y. Supp. 203, affirmed without opinion in 157 N. Y. 678, 51 N. E. 1092. As the decree in the estate herein was entered in December, 1898, the present application being made in July, 1899, it follows that petitioners cannot be aided by the latest amendment to this section. It is further contended, however, that, aside from the statutory lien created by the Code, a common-law lien for the services of the applicants attached to the decree herein. There can be no doubt that the recognition by our courts of the liens of attorneys is based on a source other

than that of statutory enactment. Before the year 1879, section 66 of the Code was merely to the effect that the compensation of attorneys for their services was governed by agreement, express or implied, in no wise restrained by law. In that year the portion of the section was added which gave to an attorney a lien upon the cause of action from the commencement of the action. This was something additional to what the common law gave to him, and was in the nature of an enlargement, and not an abridgment, of the lien hitherto recognized and enforced. In re Lazelle's Estate, 16 Misc. Rep. 515, 40 N. Y. Supp. 343. Before that time the charging lien of an attorney only attached to the judgment which represented the fruit of his labors, and did not extend to his client's naked claim, but to that extent the lien did not rest on any statute. It was thus distinctly recognized in the time of Lord Mansfield (Welsh v. Hole, 1 Doug. 238), and our court of appeals has enforced it independently of any legislative act. Goodrich v. McDonald, 112 N. Y. 162, 19 N. E. 649. In that case the court says:

"If the thing recovered was in a judgment, and notice of the attorney's claim had been given, the court would not allow the judgment to be paid to the prejudice of the attorney. If paid after such notice, in disregard of his rights, the court would, upon motion, set aside a discharge, and allow the attorney to enforce the judgment by its process, so far as needful for his protection."

So far as concerns the recovery of an attorney's costs, the judgment itself is notice, but, if he would enforce his lien further, and recover for his services beyond costs, actual notice of the lien must be given. Marshall v. Meech, 51 N. Y. 140, 143. Such a notice has been given in the present case. It will therefore be evident that, irrespective of section 66 of the Code of Civil Procedure, the lien of an attorney, so far as enabling him, upon adopting the proper procedure, to enforce a judgment for the payment of his services, must be deemed as clearly established. The question at once presents itself of whether such a lien attaches to the results of a proceeding which does not terminate in a judgment. In the case of In re Lexington Ave., supra, an attorney rendered services in a proceeding wherein his client's land was taken for street-opening purposes. An award was made fixing a certain sum as compensation. The attorney claimed a lien on this fund in the hands of the city for his services, and attempted to have the amount thereof determined. As I said above, the court held that no relief could be afforded under section 66 of the Code, as the matter was a special proceeding. While recognizing the lien of an attorney at common law, the court further held that, in view of the fact that the court had no fund under its control, and had entered no judgment, the award being simply a debt from the city to the client, which the latter could enforce by a civil action, no jurisdiction existed to determine in a summary way the value of the attorney's services and give him judgment therefor. The court expressly declined to decide whether or not there was a lien on the award, but holds that, if such a lien existed, the attorney should have brought an equitable action against his client and the city to have the amount determined. It will be observed that in the present application I am

not asked to determine the value of the petitioner's services, that question having been determined by the city court, and the difficulty that was presented in the case just discussed does not, therefore, exist here. And see, also, Bailey v. Murphy, 136 N. Y. 50, 32 N. E. 627. In the case of In re Knapp, 85 N. Y. 284, 295, the court goes into the question of whether an attorney's lien attached to the result of a proceeding brought before a legislative commission created to hear and determine claims for services rendered in building armories in New York City, and holds that, although no judgment could follow, and therefore section 66 of the Code of Civil Procedure might not strictly apply, yet the case of an attorney claiming a lien would come under the purpose of that section, and "within the principle of the common-law doctrine." The case of Ormerod v. Tate, 1 East, 464, is cited, wherein it was contended that the lien of an attorney extended only to judgments, and not to moneys recovered by arbitration. But Mr. Justice Kenyon held otherwise, placing his decision upon "the convenience, good sense, and justice of the thing." And this doctrine seems to be further approved by our court of appeals in Re H———, 93 N. Y. 381. The theory upon which the lien of an attorney was based originally rested mainly upon the equity or justice of the common law as interpreted by the courts, and not upon any fixed rule or legal principle (In re Knapp, supra; Coughlin v. Railroad Co., 71 N. Y. 443, 448), and to my mind there is no reason why this right should not attach, irrespective of statute, to the fruits of a lawyer's skilled labor, applied to what is known in our procedure as a special proceeding.

The inquiry now finally resolves itself into the question of whether the surrogate's court can take cognizance of and enforce this common-law lien. This court recognizes the appearance of parties through attorneys (Code Civ. Proc. § 2528), who must be considered as its officers in the same way that they are looked upon in other courts of record. Hence the conduct of attorneys has been regulated as in other courts; as, for example, where an attorney has been compelled to deposit moneys of an estate collected by him in a trust company pending an investigation as to whether he was personally entitled to any part thereof. In re Oraindi's Estate (Sup.) 9 N. Y. Supp. 873. And so attorneys have been protected, as they are in other courts of record, by the imposition of proper terms when their clients ask for a substitution. Chatfield v. Hewlett, 2 Dem. Sur. 191; In re Fernbacher, 18 Abb. N. C. 1. Furthermore, this court has absolute control of its records (Code Civ. Proc. § 2553), and is given broad, incidental powers (Id. § 2481, subd. 11). The only case to which my attention has been called in which an attorney has attempted to satisfy his alleged lien from a surrogate's decree is that of Flint v. Van Dusen, 26 Hun, 606. At the time that this case came on to be heard, the surrogate's court was not one of record, and it was held that because of this fact alone no lien could exist, for the reason that in courts not of record attorneys at law are not given recognition as such. Of course the strong inference remains that the supreme court would have upheld the validity

of the lien claimed could the statute which made the surrogate's court
one of record have been applied. Upon carefully considering the
issue presented by the petition and answer,—an issue which appears
to be novel in character,—I fail to see why this court, in its relation
to its officers, has not the right, aside from the present provisions of
section 66 of the Code of Civil Procedure, to recognize and enforce the
liens of attorneys in proper cases upon its decrees. While its juris-
diction is limited, yet its recognition and control of attorneys at law
carries with it, in my opinion, the same incidental power to aid them
to the like extent and for the like reasons as exercised by other courts
of record in the manner that I have above indicated. The application
is granted.

· Application granted.

(29 Misc. Rep. 534.)

In re RAWSON'S ESTATE.

(Surrogate's Court, Rensselaer County. November, 1899.)

MARRIAGE—EVIDENCE—LEGITIMACY.

Thirty years after an alleged marriage ceremony, the minister, being
bantered on the ill success of the marriage, replied: "Yes; but when I
married them I calculated they would live together." A niece of the al-
leged wife testified that the woman's father remarked that, if she expected
to get married again, he would have to get her a divorce, and in witness'
family the parties were reputed to have been married. The woman, being
about to remarry, affirmed her previous marriage; but this was necessary
to explain the paternity of her child, and, again, to explain to her second
husband's children why her first child had a different name, though she
had never taken her former husband's name. One witness, who was con-
tradicted, testified to going to the house shortly after the child was born,
and finding the parents there, and to their asserting the marriage. An-
other testified that the woman, shortly after the child was born, stated that,
if the alleged husband had not run away, he would have had to marry her,
and that he had run away before the child was born; that she never
claimed to be married; and that the repute in witness' family was that
she was not. The first marriage was disputed at the time of the second,
and was never acknowledged by the reputed husband, who never saw the
woman but once thereafter. Held not sufficient to establish that a cere-
monial marriage had been performed before the birth of the child.