That the relator was within the protection of the provision of section 3 of chapter 186 of the Laws of 1898 results from what was held in People v. Feitner, 42 App. Div. 622, 59 N. Y. Supp. 1112, and People v. Dalton, 158 N. Y. 175, 52 N. E. 1113. That the action of the commissioners in making separate and distinctive grades of their deputies, whereby the relator was consigned to the fifth and lowest grade of all, was clearly such a reduction in rank and position as made the commissioners' action invalid for noncompliance with the requirements of the section of the statute referred to. This reduction in position carried with it a reduction in the salary the relator had previously enjoyed, which salary was incident to the office he held. There can be, in no just sense, a separation of the unlawful act and its consequence. If the resolution of the commissioners degrading or reducing the relator in position was unlawful, as under the decisions it is conceded to be, the wrong affected the whole action of the commissioners; and, if the relator is entitled to reinstatement, his right extends to the full enjoyment of that of which he has been deprived unlawfully by the action of the commissioners. The claim that the reduction was made for economical reasons does not appear to be well founded, on the facts disclosed in the record before us. There has been no general reduction of the salaries of all the deputy tax commissioners. Under the grading made in June, 1898, some have been increased, and some diminished. They range from $3,250 for the first grade to $1,500 for the fifth grade. If the relator is entitled to be restored to the position he occupied on June 1, 1898, he cannot be compelled to accept the diminished salary, which is only made incidental to and connected with a grade in which the commissioners had no authority to put him. As to him, the classification into grades fails, and the incidents of that classification, as to him, fail with it.

It is very strongly urged that the relator was not entitled to the writ, because of laches in applying for it. What is stated in the opinion of the justice at special term fully disposes of that contention.

The order appealed from must be affirmed, with costs.

---

(49 App. Div. 22.)

## PILKINGTON v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   March 13, 1900.)

1. ATTORNEY AND CLIENT—FEES OF ATTORNEY—VALUE OF CAUSE OF ACTION—COMPROMISE.
   Plaintiff in an action for damages agreed to pay his attorney one-third of any sum for which the cause might be adjusted. A compromise was made between the parties, by defendant paying plaintiff a stated sum, and also agreeing to pay plaintiff's attorney any claim or lien on the cause of action which he might lawfully establish. *Held*, that the sum paid plaintiff in compromise was conclusive on the defendant as the value of the cause of action, in determining the amount to be paid plaintiff's attorney by defendant, and not such sum as might be established by a continuance of the action.

**2. SAME—CALCULATION OF FEE.**

Where plaintiff's attorney was entitled to one-third of any sum for which the cause might be adjusted, and it was compromised by defendant paying plaintiff $2,600 as a net payment, and agreeing to pay plaintiff's attorney the amount due him under such settlement, the attorney was entitled to a payment equal to one-third of $2,600 only, and not to a payment equal to one-half of $2,600, though, under his original agreement with plaintiff to receive one-third the amount recovered, his fee would be equal to one-half the net amount received by plaintiff.

**3. ATTORNEY'S FEES—STIPULATION—SUMMARY PROCEEDINGS.**

Code Civ. Proc. § 66, as amended by Laws 1899, provides that an attorney shall have a lien on his client's cause of action, and that the "court upon the petition of the client or attorney may determine and enforce the lien." *Held* not to give the court jurisdiction by summary order to enforce a compromise stipulation between plaintiff and defendant whereby defendant agreed to pay any lien which plaintiff's attorneys might establish on plaintiff's cause of action.

**4. SAME—ATTORNEY'S LIEN—ENFORCEMENT.**

Where plaintiff's attorney had a lien on his client's cause of action, and the case was compromised by defendant making plaintiff a cash payment and promising to pay plaintiff's attorney the amount of his lien, which he afterwards refused to do, the attorney had the right to proceed to judgment in the action for the protection and enforcement of his lien.

Appeal from special term, Kings county.

Action by Charles Pilkington against the Brooklyn Heights Railroad Company. From an order adjusting the lien of plaintiff's attorneys in the action, and directing payment, defendant appeals. Modified.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

John L. Wells, for appellant.

Henry Escher, Jr. (George F. Elliott, on the brief), for respondent.

HIRSCHBERG, J. The papers on this appeal disclose the following facts:

On the 6th day of November, 1899, the action was commenced, by the service of a summons and complaint, to recover damages for personal injuries alleged to be due to defendant's negligence. On the same day the plaintiff made a written agreement with his attorneys, by which he agreed that they should receive for their services one-third of any sum for which the case might be adjusted, and that neither party should settle the case without the consent of the other. Accompanying the summons and complaint was a notice to the defendant, signed by the plaintiff's attorneys, notifying the former that:

"We claim as and for our services rendered and to be rendered, as per written agreement in the above-entitled action, a lien upon any verdict, judgment, compromise, or settlement that may be had or obtained herein, to the extent of one-third thereof."

On the 7th day of December, 1899, the plaintiff received from the defendant the sum of $2,600, and in consideration thereof executed and delivered to the latter a general release, and at the same time received from the defendant, as a part of the settlement, a written agreement, dated that day, entitled in the action, and signed on be-

half of the defendant by the individual who made the settlement and paid the money, of which the following is a copy:

"The plaintiff and defendant having amicably adjusted their differences, and the plaintiff having executed and delivered to the defendant a release for all claims arising out of the above-entitled action, and the plaintiff having made arrangements with his attorneys, Messrs. Elliott, Jones & Escher, giving them a certain lien upon his cause of action, and also for costs, the Brooklyn Heights Railroad Company hereby agrees to adjust any claim for costs or for any lien upon the cause of action which the said attorneys may be able lawfully to establish."

The plaintiff's attorneys thereafter on several occasions demanded of the defendant, through the defendant's attorneys of record in the action, adjustment and payment of their lien at the sum of one-third of $2,600 and costs; exhibiting the original agreement fixing the lien, as executed by the plaintiff. In default of payment an order was then obtained in the action, based on affidavits of the facts as stated, requiring the defendant to show cause why an order should not be made determining and establishing the amount of the lien, and directing the defendant to pay to the plaintiff's attorneys one-third of the sum of $2,600, in addition to the costs of the action, and why such other and further relief should not be granted as may be just. The defendant read no papers in opposition upon the return of this order, but appeared by counsel, who was duly heard upon the motion; and thereupon the court granted the order appealed from, by which it was—

"Ordered, adjudged, and decreed that the lien of the plaintiff's attorneys herein, as determined and established by this court, is for one-half of the net amount received by the plaintiff from the defendant, being one-third of the whole amount for which said action is finally adjusted; and it is further ordered that the defendant, within five days from the service of a certified copy of this order upon its attorneys herein, pay to the plaintiff, for the use and benefit of his attorneys herein, Messrs. Elliott, Jones & Escher, or to said attorneys personally, the sum of one thousand three hundred dollars, together with ten dollars costs of this motion."

The record does not show that any arrangement was made for a formal discontinuance of the action, nor does it show whether the settlement made by the parties was with the knowledge and assent of the plaintiff's attorneys. The pecuniary circumstances of the plaintiff are not disclosed, nor does it appear whether the defendant served an answer in the action, or has or claims to have a defense upon the merits. It does, indeed, appear that the defendant is represented by attorneys of record, and that the settlement was made more than 20 days after the service of the summons and complaint; but these facts do not, under the circumstances, raise any presumption that the action was at issue. They are equally consistent with the service of a notice of appearance and the extension of time to answer, or even with the existence of a default; and, where a defendant is ready and willing to pay a large sum to settle an action, as fair an inference lies in one direction as in the other.

The question of an attorney's lien, and the mode of its enforcement, has frequently been before the courts, but no recorded case to which our attention has been directed presents the features of

this one. In the cases in the books the settlement has been either in fraud of the attorney's rights, or, being made in good faith, was without any express provision for his benefit. Here the settlement appears to have been in good faith, without fraud or collusion, and the defendant has assumed and agreed to adjust the attorney's lien. The question would therefore seem to resolve itself solely into one of practice, and to require only the determination of the mode in which to enforce the defendant's agreement made in the action. In this view, the agreement of settlement is construed as an express promise on the part of the defendant to pay the plaintiff's attorneys the amount of their lien, based on the sum of $2,600, as the value of the cause of action. The appellant insists that the amount of the settlement was not conclusive upon the defendant as to the value of the cause of action, and that the agreement is not an admission that the attorneys were entitled to any fixed amount, but that the arrangement simply bound the defendant to pay whatever sum the attorneys could establish by a continuance of the action, and by proof of defendant's negligence, and consequent liability to the plaintiff. The agreement should be construed in the light of the purpose intended to be accomplished by the parties. Its object was to settle the lawsuit, not to make provision for its continuance. That it has failed in its purpose of terminating the suit is the result solely of the defendant's failure to consummate the bargain. The plaintiff was, and still is, under a valid obligation to pay his attorneys one-third of whatever sum he secures or has secured in the litigation; and the defendant's agreement means nothing, unless it means that the defendant should assume the plaintiff's liability, and so assume it as to finally release and discharge the plaintiff. In other words, the parties intended that the plaintiff should have $2,600, freed from the attorney's lien. By making the settlement the plaintiff said to the defendant in effect:

"I am willing to accept $2,600 and release you, but if I take that sum I am under obligation, as you well know, to pay my lawyers $866.66. If you will agree to make that payment to them in addition, and by so doing release me from any liability to them for that amount, I will settle the suit."

The defendant must be deemed to have agreed to make such payment, or the settlement would fail of its evident purpose; for, as the plaintiff would otherwise still remain liable to his attorneys for the sum of $866.66, it cannot be assumed that the defendant intended only to agree to pay or adjust such lien as the latter should be able to establish against it by a continuance of the litigation or otherwise. The lien which the defendant agreed to adjust was the attorney's lien, as against the plaintiff, on the basis of a compromise of the suit for $2,600. It follows that the order appealed from requires the payment to the attorneys of more than they have claimed or are entitled to receive, and that it is erroneous, in any view, to that extent.

The appellant's counsel further insists that there is no power in the court to enforce the performance of the agreement by summary order, and in this respect we think he is correct. In Harris v. Elliott, 19 App. Div. 60, 45 N. Y. Supp. 916, the precise question

was decided, and it was held that a compromise stipulation cannot be enforced by a summary order. In that case the plaintiff agreed to pay to the moving party something over $8,000, by way of settlement. He paid $5,000, and refused to pay the balance, alleging that he was entitled to certain offsets or counterdemands against it. The court said:

. "Concerning his claim in that regard, we have now nothing to say. It is plain that he cannot be proceeded against on the stipulation, as an independent basis for summary action by the court to compel him to complete its terms, with the consequence of being adjudged in contempt for not doing so, This is not in any respect a proceeding against an attorney, as such. All the relations existing between him and the moving parties are contract relations. He brought his suit to have them defined and adjusted. The moving parties have seen fit to treat with him in that action; have recognized it and agreed to settle and compromise it, and that compromise has been carried out in part. The moving parties have a full remedy. Either the suit can proceed, and they may secure their rights by judgment, or an action lies on the stipulation."

See, also, Taylor v. Railroad Co., 38 App. Div. 595, 56 N. Y. Supp. 665, and In re Cattus, 42 App. Div. 134, 59 N. Y. Supp. 55.

No authority has been cited in support of the proposition that performance of a stipulation to settle and adjust a lawsuit can be enforced by order, disobedience of which can be punished as for a contempt. The fact that the subject-matter of the application is the claim or lien of the attorney of one of the parties to the action does not affect the right in any respect. It is not a proceeding between attorney and client, and certainly not a proceeding against an attorney, who, by virtue of his position as an officer of the court, is subject to its control and discipline; but it is a proceeding against the defendant to compel the performance of a contract made in the action with a view of adjusting it, and which it now refuses to carry out. If the arrangement had been to pay the plaintiff and his attorneys each a specified sum, and the defendant had made the payment to the attorneys, but had refused to pay the plaintiff, it would hardly be claimed that payment to the plaintiff could be compelled by order; and no difference exists in principle merely because the money is to be paid in discharge of an attorney's lien. So far as the defendant is concerned, it is merely a payment to buy its peace in the suit, or to discharge a liability arising from its negligence.

The amendment of 1899 to section 66 of the Code of Civil Procedure does not affect the question. Among other amendments relating to the lien of attorneys, this sentence has been added: "The court upon petition of the client or attorney may determine and enforce the lien." It is not necessary now to consider and decide the full scope and purport of this section, nor how far it may have extended the power of the court to apply summary remedies in aid or settlement of the dealings and transactions between attorney and client. It is sufficient to say that it does not confer power to determine and enforce a stipulation in the action not between attorney and client, although relating to the former's lien. In Bailey v. Murphy, 136 N. Y. 50, 32 N. E. 627, the court of appeals held

that where a judgment was satisfied by the client for less than its amount, without the knowledge of his attorney and without provision for his payment, the court might set aside the satisfaction, as against the attorney's claim, but had no power by order to determine the amount of compensation due the attorney. Judge Finch said (page 51, 136 N. Y., and page 627, 32 N. E.):

"On this motion the court was not at liberty to determine the amount of compensation due to the attorney, if any, over and above the amount of the taxed costs. The latter were presumptively the measure of the attorney's right, and if he was entitled to more, by virtue of some express or implied agreement, that amount must be first liquidated in some proper action between the attorney and his client, and cannot be arbitrarily determined upon a motion to vacate the satisfaction entered. The client has the same right to defend against such an asserted liability as belongs to him when any other claim is alleged, the existence or amount of which he disputes."

The right of a client to his day in court, and before a jury, on the question of his attorney's compensation for services rendered under contract, is scarcely to be disputed; and, if the amendment of 1899 was intended to deprive him of that right, its constitutionality may well be doubted. But the question is not presented here. In this case the attempt is to enforce payment of an attorney's claim against one who is not his client, but who has assumed the client's obligation; and the party so sought to be charged is entitled to assert any defenses he may have in the usual form, and in the usual forum, and even to assert that he has actually made payment in accordance with the terms of his obligation, and to have the issues tried by jury. It may be conceded that the defendant paid the plaintiff in this case with full knowledge of the attorney's lien, subject to the lien, and assuming and agreeing to discharge the lien; and yet there can be found in section 66 of the Code, as amended, nothing which justifies a summary order as against it, even if that section is to be construed as authorizing such an order as against the plaintiff to reach the money in his hands. The plaintiff's attorneys are fully protected. They have their claim against their client, who has a fund of $2,600 on which they have a lien for their compensation; and in addition they have the defendant's written agreement, made for a valuable consideration, binding it to pay and discharge this claim and lien, and which is enforceable by action. Or they have the undoubted right, supported by numerous and uniform decisions, to proceed to judgment in this action for the protection and enforcement of their lien, either by default in case no answer has been served, or in the usual way if the action is at issue. Peri v. Railroad Co., 152 N. Y. 521, 46 N. E. 849.

The order should be modified by reducing the amount of the attorney's lien from $1,300 to $866.66, and by providing that, unless that sum and the $10 costs of the motion are paid by the defendants within 20 days, the plaintiff's attorneys have leave to continue the action for the enforcement and collection of their lien. All concur.