---

(58 App. Div. 1.)

## In re REGAN.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

ATTORNEY'S LIENS—ENFORCEMENT—SURROGATE'S COURT—JURISDICTION.

    The surrogate's court has no jurisdiction to enforce an attorney's lien on a decree settling an executor's account and directing distribution, which has been released by the distributees without the attorney's consent and in fraud of his rights.

    O'Brien, J., dissenting.

Appeal from surrogate's court, New York county.

Application to enforce an attorney's lien on a decree settling the account of the executor of John Feehan, deceased, and directing distribution. From an order of the surrogate's court (61 N. Y. Supp. 1074), setting aside certain releases given by the distributees to the executor on the ground that the same were given by the distributees in fraud of the rights of their attorneys in the proceedings in which the decree was entered, and authorizing the enforcement of the decree to the extent of the lien claimed, the executor appeals. Reversed.

The questions presented arise upon facts of which a summary is as follows: Proceedings against James Regan, executor of and trustee under the last will and testament of John Feehan, were taken by the children (legatees) of

the testator to compel him to account as such executor and trustee. He had for a long time neglected or failed to account, and the children of the testator could obtain no information from him concerning the estate. They employed the firm of Adams & Hyde, attorneys at law, to institute the proceeding in the surrogate's court to compel the accounting. It does not appear that any specific agreement for compensation for services to be rendered was made with those attorneys, but there was, in any event, an implied promise to pay what those services would be worth. There is in the record a schedule annexed to a petition hereafter to be referred to, in which it is stated that two of the children of the testator employed the attorneys named, for themselves and the other children, legatees under their father's will; and they stated that, being without means, they could not pay a retainer, but would pay a liberal fee out of the money which the executor should pay to them, if it was found that he had assets in his hands for distribution. Under their employment, the attorneys began the proceeding in the surrogate's court. They compelled the executor to present his account and file an inventory of the estate. After a contest the proceeding terminated (in December, 1898) in a decree made by the surrogate of the county of New York, in which it was found that the cash in the hands of the executor and trustee for distribution on January 31, 1898, was the net sum of $7,610.35; and the executor was required forthwith to pay to five of the testator's children named therein, each the sum of $1,522.07, and also to pay to them jointly the sum of $590.60 for costs and disbursements. That decree was entered on the 10th day of December, 1898. In the proceeding which resulted in the entry of that decree the attorneys for the Feehan children rendered meritorious and valuable services, and it fully appears that the favorable result of the accounting to these children was due altogether to the efforts of the attorneys they employed. After the entry of the decree, and on or about the 10th of January, 1899, a receipt for costs awarded by the decree was given to the executor, and a release and discharge from all claims therefor was executed under seal by each of the five children, was acknowledged before a notary public, and delivered to the executor; and on the same day each of the five children executed under his or her hand and seal an instrument acknowledging the receipt from the executor, by each, of the sum of $1,522.07, paid in accordance with the direction of the decree, and each of the instruments contained the following clause: "I do hereby expressly acknowledge the receipt of the said sum from the said James Regan as executor and trustee as aforesaid, and forever release and discharge him from all claims therefor." On the 11th of January, 1899, the clerk of the surrogate's court made a certificate showing the satisfaction of the decree of December 10, 1898, and that certificate was filed in the New York county clerk's office on the same day; thus making a record of the complete satisfaction of all the provisions of the decree entered upon the final accounting. The receipts, releases, or satisfaction pieces, and the certificate of the clerk of the surrogate's court were all made, executed, and filed without the knowledge of the attorneys for the Feehan children, and those attorneys claim that the instruments were procured by the executor upon a compromise and settlement made with the children for a sum less than that required to be paid them by the decree; that the settlement was made collusively and in fraud of the rights of such attorneys; that it was made by the executor after notice served upon him by the attorneys that they held an assignment of the right, title, and interest of the five children in and to the assets of the estate of their father, and that the attorneys also had a lien on the distributive share of each of such children for compensation; that notice was given in writing on the 4th of November, 1898. It does not appear that there was any actual assignment of the shares made, but that the notice of the claim of lien was given is abundantly proven. The attorneys did not discover until the 12th of January, 1899, that the settlement and compromise above mentioned had been made by the executor with the Feehan children. Thereafter the attorneys brought an action in the city court against the Feehan children to recover the value of the services rendered them in the accounting proceeding in the surrogate's court, and that action resulted in a judgment in favor of the plaintiffs therein for the sum of $2,083.24, upon which an exe-

cution was issued and returned unsatisfied. Thereafter, and in June, 1899, the attorneys applied by petition to the surrogate of the county of New York, setting forth the material facts, and praying that a citation be issued to Regan to show cause why the records of the surrogate's court should not be corrected, why a memorandum of the satisfaction of the decree made at the foot thereof, and signed by the clerk of the surrogate's court, should not be stricken from the decree, and why a paper purporting to be a transcript of the decree, and filed in the office of the clerk of the county of New York, should not be set aside, to the extent of the petitioners' claim or lien, with interest thereon, and why the satisfactions of the said judgment should not be set aside, and why other relief should not be granted. The executor answered the petition by affidavit, and, the matter coming on to be heard before the surrogate, an order was made directing that the records of the surrogate's court be corrected and amended by striking therefrom a memorandum at the foot of the decree to the effect that the decree was satisfied of record, and to amend the same so that "said decree is satisfied, except as to the sum of $2,083.24, with interest from May 17, 1899," and by further directing that the satisfaction of the decree filed in the surrogate's court be vacated and set aside "to the extent of $2,083.24, with interest from May 17, 1899, which sum is the lien of the petitioners upon said decree"; that the certificates of the clerk of the surrogate's court appended to the transcripts of the decree, to the effect that the decree was satisfied of record, and which transcripts and certificates were filed in the office of the clerk of the county of New York on the 11th day of January, 1899, be vacated and set aside to the extent before referred to. And the county clerk was ordered to mark upon the certificates, and each of them, the fact that the same, and each of them, is vacated and set aside as aforesaid (that is, to the extent of $2,083.24, with interest, as aforesaid), and that the petitioners (Messrs. Adams & Hyde) are authorized to enforce a decree of the surrogate's court of the 10th of December, 1898, against the said James Regan, so far as it may be necessary to satisfy their aforesaid lien upon the said decree. It is from this last-mentioned order that the present appeal is taken.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Bernard J. Tinney, for appellant.
Louis Marshall, for respondent.

PATTERSON, J. In effect, the order appealed from is an adjudication by the surrogate's court that a lien existed in favor of the attorneys upon the amounts directed to be paid by the executor and trustee to the testator's children, and that the surrogate's court has power or jurisdiction to enforce that lien, as between attorney and client, and also has power to vacate and set aside releases given to an executor and trustee by the distributees entitled under a decree of distribution, to an extent sufficient to discharge the lien of the attorneys upon the distributive shares of the persons whose claims were satisfied and released. It is not controverted that at the time the decree of distribution was entered in this special proceeding the attorneys had no lien under the provisions of section 66 of the Code of Civil Procedure. If they had any lien at all, it was only such as would be analogous to the common-law lien of an attorney upon a judgment, which could not arise until after that judgment was recovered, for the value of the services rendered to the client in procuring it. We are not called upon in this case to determine whether such a lien existed; for we are satisfied that, even if it did exist, there is no jurisdiction in the surrogate's court to

vacate and set aside the releases or satisfaction pieces given by the distributees to the executor in this proceeding. The authority of the surrogate's court was invoked by the attorneys on the ground that the instruments were executed and delivered collusively and in fraud of the attorneys' rights. The jurisdiction was invoked on the ground of fraud. We are not aware that the surrogate's court has any authority to pass upon such a question, as part of the defined jurisdiction or as within its implied powers, either as enumerated in the statute or resulting from necessity. "The surrogate's court possesses such jurisdiction only as is expressly conferred by statute or necessarily implied from the power conferred, and that does not include the power to annul or set aside a release made between parties interested in an estate and the executors, on the ground of fraud. In order to obtain such relief, resort must be had to a court possessing general equity powers and jurisdiction." Sanders v. Soutter, 126 N. Y. 200, 27 N. E. 265.

It is sought, however, to sustain the order appealed from upon the ground that the surrogate's court had jurisdiction to enforce an attorney's lien, and that the question of fraud, as related to the releases given to the executor, and the satisfaction of the claims of the distributees, is not material to the consideration of the power of the surrogate. The jurisdiction in this case was assumed upon the theory that the surrogate's court being a court of record, and parties to proceedings in that court being authorized by law to appear and be represented by attorneys, the surrogate's court has, by necessary implication, the same power to protect attorneys in the enforcement of their claims against their clients that any other court of record would have under similar circumstances; and, further, it was practically held that the surrogate's court, having control of its records, can so deal with them as to make a decree of distribution of an estate enforceable against an executor or trustee for the benefit of third parties not interested in an estate until after the entry of a decree, and the settlement and release of the rights of the parties pursuant to the terms of that decree,—in other words, that the surrogate's court, by reason of its being a court of record, has the power, after its proper jurisdiction has ended in a decree of distribution, and that decree has been satisfied, to take cognizance of and determine rights of third parties against the distributees, which rights did not arise until after the decree was entered, and thus to enlarge its jurisdiction and extend it to matters foreign to the purposes for which such courts were instituted; for here there was no lien upon the shares of the distributees until after the jurisdiction of the surrogate's court ended, if there were any lien at all. We are unable to find where, within the conferred or implied powers of a surrogate's court, a new jurisdiction arises after its power to make a decree has been exhausted. It certainly does not arise from the fact that it is a court of record. It is not for all purposes a court of record. It is merely such a court for the purposes of its conferred or implied jurisdiction. It does not have the same power over its records that other courts of record have. It was held in Re Henderson, 157 N. Y. 423, 52 N. E. 183, that the

legislature, in providing that the power conferred upon surrogates' courts respecting their records "must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises the same power, did not intend to assimilate, in all respects, the power of the surrogate's court over its records to that possessed by the supreme court." There is a limitation upon its power, as a court of record, over its records. Such power as it has in that regard is to be exercised in subordination to and to effectuate some purpose connected with the purposes of that court, within its jurisdiction as conferred by statute, or its implied powers as defined by statute, or as necessary to the execution of its conferred powers. We are, therefore, of opinion that the surrogate had no jurisdiction to make the order appealed from in this case, the effect of which is to allow the process of the surrogate's court, peculiar in its nature, and directed against the person of the executor, to be invoked for the satisfaction of a claim of a third party, not in existence at the time the surrogate's jurisdiction to make a decree had ended. That the executor and trustee may be liable to the attorneys in another forum is a matter in respect of which we express no opinion now. We are satisfied, however, that the order appealed from should be reversed on the ground that the surrogate's court had no jurisdiction to make it.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur, except O'BRIEN, J., who dissents.