ceedings. 19 Enc. Pl. & Prac. 546; Foster v. Townshend, 2 Abb. N. C. 30, note; White v. Geraerdt, 1 Edw. Ch. 336. I conclude that the complaint states a cause of action in favor of the wife.

The demurrer is to be sustained, however, so far as it proceeds upon the insufficiency of the complaint in the attempted statement of a cause of action in favor of the receiver, since he has no standing in court in the absence of an allegation that leave to sue had been obtained. Where leave is required merely in compliance with some rule of law which opposes an obstacle to the prosecution of an action otherwise maintainable as of right, the leave may be granted nunc pro tunc, and its omission does not affect the cause of action. Mc-Kernan v. Robinson, 84 N. Y. 105. Nor may it be availed of for the first time on appeal. Dunham v. Fitch, 48 App. Div. 321, 62 N. Y. Supp. 905. A material difference exists, however, in an action brought by a receiver in sequestration proceedings. Without permission of the court, he may neither institute nor defend any action or proceeding whatever, and such possession as he has is merely the possession of the court. The omission of leave of court is not a mere obstacle to his maintaining a suit, but the granting of leave is the very foundation of his right to sue, and the right owes its existence to the permission. Foster v. Townshend, 68 N. Y. 206. Under these circumstances, an allegation that leave to sue has been obtained is essential to the cause of action. Abb. Tr. Brief Pl. § 287. And the rule has been lately applied to such a case as that before me. Morgan v. Bucki, 30 Misc. Rep. 245, 61 N. Y. Supp. 929. In other respects the demurrer is overruled.

The question as to the seasonableness of the demand for payment does not affect the cause of action,—at least, so far as it proceeds for injunctive relief; and there is no defect of parties in the nonjoinder of a supposed assignee of the legacy, for the complaint does not allege that the claim has been in fact assigned.

Demurrer as to sufficiency of complaint in favor of receiver sustained, with costs. Upon all other grounds, demurrer overruled, with costs. Leave to plead over on usual terms.

---

(58 App. Div. 502.)

                    In re EVANS' WILL.

(Supreme Court, Appellate Division, First Department. March 22, 1901.)

1. WILL CONTEST—FRAUDULENT SETTLEMENT—SURROGATE'S JURISDICTION.
    A surrogate has no power to determine whether the settlement of a will contest was fraudulent, collusive, or improvident.
2. SAME—ATTORNEY'S LIEN—ENFORCEMENT.
    An attorney, for the purpose of protecting his lien on his client's claim, conferred either by contract or by Laws 1899, c. 61, is not entitled to proceed with a will contest after his clients, either with or without his consent, have settled the same with the executors, who knew of his claim to a lien, as the liability to him of either the executors or his clients may be enforced in a proper action therefor.

Appeal from surrogate's court, New York county.

Probate of the last will and testament of Thomas W. Evans, deceased. From an order overruling, canceling, and striking out ob-

jections thereto (68 N. Y. Supp. 936), David Keane, counsel in behalf of Thomas B. Enos and other contestants, appeals. Affirmed.

See, also, 69 N. Y. Supp. 487.

Dr. Thomas W. Evans, an American dentist, died in Paris, November 14, 1897, leaving a large estate situated in France, Pennsylvania, and New York, the greater part consisting of real property in the city of Paris. At his death he left, him surviving, as heirs at law and next of kin, the various persons whose consents were attached to the petition for the discontinuance of this proceeding. Shortly after Dr. Evans' death, two wills were offered for probate in the courts of France, and subsequently one of them was presented in the city of Philadelphia, where it was in the first instance admitted to probate, and a copy thereof was also offered for probate in the surrogate's court of this county, to which objections were filed in behalf of Thomas B. Enos and others, by David Keane, as their counsel. The retainer of Mr. Keane for certain of the next of kin and heirs at law was accomplished by separate instruments or "agreements," and, these being identical in form, one only need be referred to, which, upon the question before us, contains the following material provisions: "Now, therefore, in consideration of the services rendered and to be rendered by the party of the second part to the party of the first part in contesting the validity of this will and opposing the probate thereof, and the powers and agreement of the said Keane hereby made to act as the attorney and counsel of the said Enos in contesting the said will and in conducting and directing all negotiations that may be deemed advisable by him leading to a settlement or compromise of the matter in dispute, as aforesaid, the said Thomas Enos agrees to pay to the said Keane as compensation for the services rendered and to be rendered a sum equivalent to eight per cent. of any amount or value that may come to him from the estate of the said Thomas William Evans either as the result of legal proceedings, compromise, or settlement, or howsoever; and for better securing the compensation of the Keane aforesaid said Thomas Enos, for himself, his heirs and executors, hereby assigns eight one-hundredths of any sum or value which may come to him, or which he may be entitled to from or in the estate of the said Thomas William Evans; and the payment of such sum is likewise hereby made a lien upon the claim or interest of the said party of the first part against his interest in the estate of his uncle, Thomas William Evans, deceased, as it may be made to appear and be. * * * It is further agreed that the party of the first part shall be at liberty at any stage of the case, either before, during, or after suit commenced, to settle or compromise upon such terms as he may desire as to his interests." Under the agreements, Mr. Keane proceeded to render valuable services, and has continued to render such down to the present time; and his efforts, in connection with those of other counsel, resulted in an offer of settlement from the executors of the estate of a large sum of money, which offer, however, was subsequently withdrawn, and reduced almost one-half. To the acceptance of the reduced amount Mr. Keane was opposed. Thereafter, without his knowledge or consent, an attorney in Philadelphia, representing some of the heirs at law, placed himself directly in communication with Mr. Keane's clients, and, with the assistance of the counsel of the executors, negotiated and procured an agreement of settlement upon which are based the consents to discontinue this proceeding and all other proceedings. Mr. Keane did not know of the settlement or its terms until some months later, when a motion, founded upon the agreement of settlement, was made to vacate, overrule, and withdraw all objections to the probate of the will. He then appeared and opposed the motion, which, however, was granted, and from the order thereupon entered this appeal is taken.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

J. Noble Hayes, for appellant.
Wolcott G. Lane, for proponent respondent.
Alexander B. Crane, for executor respondent.

O'BRIEN, J. The grounds upon which Mr. Keane opposed the motion to discontinue the contest against the probate of the will were that he was a party in interest by virtue of the agreements he had made with his clients, under which he secured a definite portion of their respective shares in the estate, which was something more than his rights as attorney of record, and was in addition to the attorney's lien by virtue of section 66 of the Code of Civil Procedure; and that the discontinuance sought, containing no provision for his protection, was a fraud on him and upon his clients. That he had rendered valuable services to the clients, that the executors had notice of his agreements with them, and that the settlement was arranged without his knowledge or consent, are not seriously disputed; nor is his claim that under the agreement he held an assignment of his clients' respective interests to the extent of 8 per cent. In actions, and equally in special proceedings since the amendment to section 66 of the Code of Civil Procedure (chapter 61, Laws 1899), an attorney "has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment or final order." Pursuant to this section it has been held that, where an attorney institutes an action under an agreement with his client, by which he is to receive a certain amount of the recovery, and the defendant settles with the plaintiff without the knowledge of the attorney, the attorney has the right to continue the action, and proceed to judgment for the protection and enforcement of his lien, either by default in case no answer has been served, or in the usual way if the action is at issue. Peri v. Railroad Co., 152 N. Y. 521, 46 N. E. 849; Pilkington v. Railroad Co., 49 App. Div. 22, 63 N. Y. Supp. 211; Rochfort v. Railway Co., 50 App. Div. 261, 63 N. Y. Supp. 1036. Whether the same right is reserved to the attorney in proceedings to contest the probate of a will in the surrogate's court, and to that end prevent the withdrawal of objections by the clients to the probate, or be allowed to continue the contest on his own behalf, is the question presented for our determination. In reaching a conclusion on this point it is unnecessary for us to consider whether the settlement made was fraudulent, collusive, or improvident, because those were questions which the surrogate had no jurisdiction to determine. The authority relied upon by the appellant (In re Regan, 29 Misc. Rep. 527, 61 N. Y. Supp. 1074) in support of the contrary ruling that the surrogate has power to adjudicate upon allegations of fraud and collusion between the executors and the heirs, or between the executors and the attorneys for the heirs, was reversed in this court in an opinion handed down February 8, 1901. 68 N. Y. Supp. 527. Therein the expression of the court of appeals in Sanders v. Soutter, 126 N. Y. 193, 27 N. E. 263, was quoted and followed:

"That the surrogate's court possesses such jurisdiction only as is expressly conferred by statute, or necessarily implied from the power conferred, and that does not include the power to annul or set aside a release made between parties interested in an estate and the executors on the ground of fraud. In

order to obtain such relief, resort must be had to a court possessing general equity powers and jurisdiction."

See, also, In re Randall, 152 N. Y. 508, 46 N. E. 945.

In this latter case the surrogate in an accounting proceeding set aside an assignment on the ground of fraud, and the court of appeals, after discussing the authorities, says:

"They establish the principle that the general powers of a court of equity do not belong to the surrogate's court. * * * When, however, the validity of the assignment is attacked on the ground that it was procured by fraud, a question is presented requiring for its determination the general power of a court of equity, and in some cases the trial of issues by a jury."

As we read the authorities, therefore, the surrogate was without power to determine the questions of fraud, collusion, and improvidence charged against the fairness and validity of the agreement of settlement. It follows that we must consider the rights of the attorney unaffected injuriously or beneficially by these charges, and we must also keep in mind the distinction between the character of the lien acquired in an action and one in a special proceeding. In re Lexington Ave., 30 App. Div. 602, 52 N. Y. Supp. 203, affirmed in 157 N. Y. 678, 51 N. E. 1092. Until the amendment of 1899, supra, an attorney acquired no lien in a special proceeding under section 66 of the Code of Civil Procedure. This amendment or law took effect September 1, 1899, after the commencement of this proceeding, which, it appears, dates from June 23, 1899. If, however, we assume that Mr. Keane is entitled to the benefit of the amendment by reason ·of services rendered after the amendment became a law, the conclusion, we think, is the same. His clients, without his consent, had the legal right to settle, irrespective of the express provision in the agreements which accorded them that right. In Lee v. Oil Co., 126 N. Y. 579, 587, 27 N. E. 1018, the court says:

"We are of the opinion that the existence of such a lien in favor of the attorneys does not confer on them a right to stand in the way of a settlement of an action which is desired by the parties, and which does not prejudice any right of the attorneys. We do not think that such an agreement deprives a party of the right to control the management of his own cause, and to determine when the litigation shall cease, and how far it shall be extended."

Not only, therefore, was a right construction given by the learned surrogate to the provision in the agreements here as to the right of the clients to settle, but, in the absence of any such provision, their right to do so without the consent of their attorney finds support in the decisions; and upon this branch of the subject we must hold that, both under the agreements and under the law, aside from the agreements, Mr. Keane's clients had the legal right to settle without his consent. The agreements, we think, gave to Mr. Keane an assignment to the extent of 8 per cent. of any sum which his clients might realize upon the settlement; but such an interest, whether by agreement or by virtue of an attorney's lien, cannot be enforced by allowing him to prevent the withdrawal of the objections, so as to enable him to prosecute them for his own benefit. In no sense did he become substituted in the place and stead of his clients; nor are his rights such that, to the detriment of all the others interested in the estate, he may be permitted to continue the litigation for the pro-

tection of his rights, when these may be secured in another way without injury to others. Having agreed that his clients might compromise and settle, it would be going further than any adjudicated case to hold that in a contest over a will the attorney could prevent the settlement arranged between the parties. Yet this would be the result if he were permitted to continue the litigation for the enforcement of his claim.

Referring to section 66 of the Code of Civil Procedure, it has been held, with respect to actions, that "this provision does not prevent parties from settling and releasing judgments, suits, and controversies." Poole v. Belcha, 131 N. Y. 200, 203, 30 N. E. 53. And in Peri v. Railroad Co., supra, it is said, "The client is still competent to decide whether he will continue the litigation, or agree with his adversary in the way." Settlements by clients, as we have already said, cannot destroy the interests of an attorney, whether secured by agreement or under an attorney's lien. The distinction, however, must always be observed between the attorney's rights and the manner of their enforcement. Thus, in actions it has been held that the court will not allow the attorney's lien to be enforced in a summary way upon motion, but that the relief is to be obtained in the usual manner. Pilkington v. Railroad Co., supra; Rochfort v. Railway Co., supra. If we assume, therefore, without deciding, that the surrogate's court has power to enforce an attorney's lien, it by no means follows that the attorney will be permitted to enforce it in the manner he may elect; the question of the remedy being one over which the court has control. In an action ordinarily it is proper that the attorney should be allowed to continue it to judgment, for not only is this the most direct and adequate remedy to enforce his lien, but it can be pursued without interfering with the legal rights of others. To protect the attorney's rights here, it is not essential that he should prevent the withdrawal of the objections, and then intervene, and contest the will in his own behalf. As stated, the clients had the right to make the settlement without his consent; and the executors, even with knowledge of his claim, had the same right. Having made the settlement, either or both may, in a proper action or proceeding, be liable to the attorney; and such liability will undoubtedly arise when the time to pay over the money to the clients is at hand. Here the settlement did not destroy the attorney's lien, or affect the right which he obtained under the assignment of an interest to the extent of 8 per cent. of the recovery; for this lien, notwithstanding the settlement, remains in full force and effect.

All we are now concerned with is the correctness of the surrogate's determination that the attorney had no right to prevent the withdrawal of the objections to the consent. Clearly, the attorney could not file objections in his own behalf; for under the agreement with his clients, whereby he was assigned 8 per cent. of their interests in the estate, there was no severance of the 8 per cent. from their respective interests, nor an assignment to the attorney with power to settle and adjust such severed interests. The attorney is entitled to receive a sum equal to 8 per cent. of any amount

which may come to the clients from the estate either as the result of legal proceedings or of a settlement; but this does not give him a right to intervene, and contest the will in his own behalf. Under the agreement and by law, as we have said, the clients were given the power to settle and compromise their interests, and this necessarily involved the privilege of discontinuing any action or proceeding. But such settlement did not impair or destroy the attorney's lien. Whether we consider his right, however, from the standpoint of a lien or under the assignment, he occupies no such position as would enable him to destroy his client's ability to settle. Courts, in the effort to support and enforce an attorney's claim in a proper and meritorious case, must, in granting the remedy, see to it that the remedy is consistent with the rights of others. Here the claim asserted by the attorney is just and proper, and the courts would be warranted in aiding its enforcement in any way not inconsistent with others' interests. No doubt, authorities can be found where, to prevent an unjust advantage being taken of an attorney by a client, drastic remedies have been allowed; but, as well said in the unreported memorandum of Surrogate Ransom in Re Estate of Peter Wittner, filed August 11, 1890:

"These cases are not probate causes. In respect to the latter, the surrogate has special duties and powers imposed upon him by statute which vest in him the control to a great extent of the proceedings, irrespective of the wishes of the parties or their attorneys. In such proceedings it is not in the power of the attorney, in the assertion of any lien he may claim against his client, to prevent the latter from withdrawing his objection to probate; nor has he the right to insist in proceeding with trial of the same after such withdrawal, as the rights and interests of the other parties would be affected, not merely incidentally, as in ordinary litigations, but directly, and very seriously, by the recognition of the procedure which the applicant asks the court to permit him to pursue."

This clearly points out the nature of probate proceedings, and the reasons why an attorney, even in the enforcement of a just and meritorious claim or lien, should not be permitted to continue a contest, or prevent what the policy of the law always favors, namely, the speedy settlement of estates. For this reason, as well as those given by the learned surrogate, we think that the order appealed from should be affirmed, with costs. All concur; VAN BRUNT, P. J., in result.

VAN BRUNT, P. J. I concur upon the ground that the appellant was precluded from objecting to the settlement by the terms of the agreement referred to in the opinion.

---

(34 Misc. Rep. 37.)

### In re EVANS' WILL.

(Surrogate's Court, New York County. February, 1901.)

