Matter of the Application of the Executors of the Estate of CHARLES H. BECKETT, Deceased, to Fix and Determine His Fees in the Estate of AMOS F. ENO, Deceased.

(Surrogate's Court, New York County, May, 1920.)

Attorneys — liens — Surrogates' Courts — when attorney for contestants in a will contest has no lien for services — Judiciary Law, § 475.

An attorney retained to contest the probate of an instrument purporting to be a last will, though successful, has no lien for services though they were of great value and apparently worth more than he had been paid.

Where, therefore, the executors of said attorney make application under section 475 of the Judiciary Law to have the surrogate fix and determine his fees and to enforce a lien therefor upon the interests of certain of the next of kin of the decedent whose will was contested, the petition will be dismissed on the ground that it does not state facts sufficient in law to create an attorney's lien for services rendered to a client.

Surrogate's Court, New York County, May, 1920. [Vol. 112.

APPLICATION by executors to have fixed and determined the fees of an attorney and to enforce a lien therefor.

Edwin C. Mulligan (Hugo Wintner, of counsel), for petitioners.

Sullivan & Cromwell, for respondents.

COHALAN, S. This is an application by the executors of Charles H. Beckett, deceased, to have fixed and determined the fees of the late Mr. Beckett, as attorney and to enforce a lien therefor upon the interests of certain of the next of kin and heirs at law of Amos F. Eno, deceased. Amos F. Eno died in October, 1915, leaving him surviving, among others, as heirs at law and next of kin, Gifford Pinchot, Antoinette E. Johnstone and Amos R. E. Pinchot. These persons, among others, are legatees and devisees in two testamentary papers executed by Mr. Eno, one in 1914, the other in 1915. Their interests are much greater under the 1914 than under the 1915 paper. The petitioners allege that the late Judge Beckett was retained by the above-named persons to contest the validity of the 1915 will and to take proceedings to the end that the prior instrument of 1914 be established as Eno's last will and testament. After a protracted trial Judge Beckett's clients were successful, and the will of 1915 was denied probate. A proceeding was also instituted by Judge Beckett's clients for the probate of the 1914 will. A petition was filed, but nothing else can be done until final disposition of the litigation over the 1915 paper. The petitioners allege that the reasonable value of Judge Beckett's services is the sum of $100,000, of which he had been paid $35,000, and pray "that the court fix and determine the professional fees of Judge Beckett and that it be determined that the petitioners have a lien in the amount

Surrogate's Court, New York County, May, 1920. [Vol. 112.

of such fund as fixed upon the respective interests and claims of the clients in the estate, whether as devisees, legatees or heirs at law and next of kin, and that the said lien as determined be enforced according to law.'' The former clients of Judge Beckett attack the petition on several grounds, but the only one I shall consider is that '' the petition does not state facts sufficient in law to create an attorney's lien for services rendered to a client.''

It will be unnecessary to refer to any of the other issues raised by the answer, because I am constrained to hold that there is no lien which can be fixed or enforced in this proceeding. The petitioners rely on section 475 of the Judiciary Law, which provides:

'' From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come; * * *.''

Judge Beckett's services were performed in two separate and distinct proceedings, namely, the proceeding to probate the will of 1915, in which he represented some of the contestants, and the proceeding to probate the 1914 will, in which at least one of his clients above named was a proponent. Under the above statute the Surrogate's Court is in the same position as any other tribunal. The same general rules apply. One charging lien cannot extend to two actions, though there may be a distinct lien in each action. That two proceedings (not consolidated) concerning the same estate are prosecuted in the Surrogate's Court is no reason why they may be considered as one proceeding under the statute giving a charging

Surrogate's Court, New York County, May, 1920. [Vol. 112.

lien. · The argument, therefore, that the two proceedings, one for the probate of the 1914 will, and the other for the probate of the 1915 will, are to be considered as a single employment for the accomplishment of the ultimate result of securing the legacies under the prior will, and that the contested proceeding should be considered merely as a " preliminary step " for the purpose of putting the clients in a position to proceed with the probate of the 1914 will is no answer to the well-settled rule that the statutory lien is confined to the particular action or proceeding in which the services were performed, and that the amount of such lien is measured by the value of the services performed in that proceeding only. *Williams* v. *Ingersoll,* 89 N. Y. 508; *Matter of Leopold,* 186 App. Div. 872; *Brown* v. *City of New York,* 11 Hun, 21; *Matter of Heinsheimer,* 214 N. Y. 361, 365, and cases cited. The very first words of the statute would seem to be conclusive on this point. The lien is statutory, and the statute has expressly confined it to the particular proceeding or action. Of course, a general or retaining lien may extend to any number of actions or proceedings, provided the attorney has moneys, papers or securities belonging to his client which came into his possession in the course of his professional employment. *Matter of Heinsheimer,* 214 N. Y. 361, 364. But no common-law lien is here claimed or asserted.

The services in filing the petition for the probate of the 1914 will were trivial in comparison with the tremendous labors of Judge Beckett in the other proceeding. It is unnecessary to decide whether or not the attorney had a lien in the uncompleted proceeding to probate the prior will. It may be assumed that the object of this particular application is to fix a lien and, if possible, obtain payment of the balance due for Judge Beckett's very valuable services in procuring

the rejection of the 1915 instrument. If the petitioners are successful in this application, doubtless payment will follow for the minor services in connection with the 1914 will. The petitioners, therefore, must rely on the contested probate proceeding, and on the services therein performed, for the particular charging lien which is the subject of this application.

That an attorney for a contestant in a probate proceeding has a statutory lien does not appear to have been expressly decided. At least, no such case has been called to my attention, and I have been unable to find any. In *Matter of Evans,* 33 Misc. Rep. 567, Surrogate Thomas said " * * * I greatly doubt that the filing of objections to the probate of a will can be treated as the assertion of an affirmative cause of action or as an answer containing a counterclaim such as to require the establishment of a lien by the attorney under section 66 of the Code of Civil Procedure."

Subsequently the same surrogate referred to this decision as overruling the contention that the attorney had a charging lien, and stated (*Matter of Evans,* 58 App. Div. 502) that the attorney undoubtedly had a lien based on his contract of retainer which gave him a percentage of any recovery and an assignment of the interests of the clients in the estate. These two decisions were affirmed by the Appellate Division (58 App. Div. 502; 65 id. 100), but in neither case did that court decide or discuss the question of the right of an attorney to a statutory lien. In 58 Appellate Division, 502, the court assumed that there was a lien, but said at page 508: "All that we are now concerned with is the correctness of the surrogate's determination that the attorney had no right to prevent the withdrawal of the objections to the consent."

In the *Evans* controversy it appeared that the client received through compromise a sum of money, which

Surrogate's Court, New York County, May, 1920. [Vol. 112.

was the fruit of his attorney's efforts in opposing the will. Moreover, there was an express contract of retainer, as well as what purported to be an assignment in the attorney's favor. A will contest in the Surrogate's Court is not an original proceeding to defeat probate. The proceeding is commenced by the proponent for the purpose of having the will admitted to probate. The contestant is in the same general situation as a defendant, who has interposed a general denial in an action. The contest is limited to the issues raised by the petition and answer. The contestant asserts no " cause of action, claim or counterclaim " any more than the defendant in an action at law who goes to trial under a general denial of the allegations of the complaint. When probate is successfully resisted, what is secured is a decree that the paper propounded is not entitled to probate as a last · will and testament. The decree does not produce or put anything of value into the hands of the contestant except the amount of whatever costs and allowances are awarded to him. If there is no other will the successful contestant is a next of kin, who, before and after his successful contest of the will, claimed to be entitled to the estate under the Statute of Distributions. By resisting probate he denies the validity of legacies or devises that are given by the will and asserts that he owns the estate by virtue of the statute. A successful will contest confirms him in his ownership of an estate which a valid will would have taken from him. In this case there is a prior will the validity of which has not been determined. But the situation is no better for the attorney. The contestants in the proceeding to probate the later will have as their ultimate objective the probate of the prior will. This can be accomplished only through the medium of another separate proceeding. It seems to me that *Matter of*

*Robinson,* 125 App. Div. 424; affd., 217 N. Y. 639, is analogous. In that case there was an accounting proceeding in which the next of kin sought to charge an administratrix with certain property not accounted for, which the administratrix claimed as her own, but which the next of kin claimed was the property of the decedent. The attorney for the administratrix was successful in resisting the contention of the next of kin. It was held that the attorney was not entitled to the statutory lien. The Appellate Division said (at p. 425):

" Subsequently, upon the accounting, the next of kin sought to charge as against the administratrix certain property that belonged to her, which it was claimed was the property of the husband and should be accounted for. In that proceeding the respondent appeared for the appellant and defeated the claim of the intestate's next of kin; but that was a claim against the appellant, not one in her favor which was enforced in the proceeding in the Surrogate's Court and in which the appellant was represented by the respondent. Section 66 of the Code of Civil Procedure gives a lien upon ' his client's cause of action, claim or counterclaim,' but the appellant had no cause of action, claim or counterclaim involved in the proceeding in the Surrogate's Court. The next of kin of her intestate asserted the claim, which was defeated. After the final order the lien attaches to ' a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come;' but here there was no cause of action, claim or counterclaim which was sought to be enforced in the proceeding in which the respondent represented the appellant. All that could be subject to a lien of the respondent was the estate of the decedent, which was the subject of the controversy before the surro-

Surrogate's Court, New York County, May, 1920.   [Vol. 112.

gate, and the property that belonged to the appellant and was in her possession was neither involved in a cause of action nor a claim of the appellant nor in the proceeds of the final order.''

The foregoing, as well as other cases cited by the respondents, may appear to take a rather narrow view of the scope of section 475, but it seems to me that the principle is well settled by the decisions and that I am bound to apply it. It appears, therefore, that an attorney retained to contest a will is employed to defeat a cause of action, claim or counterclaim asserted by the proponent against his client and does not represent a person who asserts a cause of action, claim or counterclaim. Under this view the late Judge Beckett had no lien in the proceeding in which the later will was rejected, though his services were of great value and apparently worth more than he had been paid.

The decisions in *Matter of Wood,* 170 App. Div. 533, and *Matter of Pieris,* 82 id. 466; affd., 176 N. Y. 566, are not to the contrary. In the first case the client was a sole legatee. The attorney procured probate of the will and the appointment of his client as administrator c. t. a. What was decided in that case was that the attorney, because of his services in establishing his client's sole right under a will to ownership of the estate as against another who claimed under the Statute of Distributions, was a '' person interested '' under section 2768 of the Code of Civil Procedure, and entitled to compel an accounting. The opinion concurred in by a majority of the court stated that the attorney had a lien under section 475 of the Judiciary Law, but it is apparent that the case has little or no application to the facts herein, where the attorney represented *contestants* in a probate proceeding and where no fund or estate will come into the hands of the clients until they are successful as *proponents* in

another proceeding. In the second case (*Matter of Pieris, supra*) the attorney had taken affirmative action for his client in establishing her sole ownership to a specific fund deposited forty-three years previously in a savings bank which had advertised for information as to the next of kin of the depositor. The attorney had performed services in having his client appointed administrator. The court said, page 469, that "upon the entry of the decree her title to that fund may be said, for present purposes, to have been practically adjudicated in her favor."

Under the decree rejecting the 1915 will Eno was not decreed testate or intestate. The rights of Judge Beckett's clients as legatees under a prior will or as next of kin are still undetermined. Furthermore, the *Pieris* case was instituted in the Supreme Court and the writer of the opinion stated that the decision was intended to be limited to the peculiar facts of that case. That the decision established no new principle governing attorneys' liens in administration proceedings in Surrogates' Courts is shown by a later case in the same court in which the *Pieris* decision was not taken as a precedent. *Matter of Rabell,* 175 App. Div. 345, 350.

There is another aspect that merits consideration. The statutory lien "attaches to a verdict, report, decision, judgment or final order in the client's favor and the proceeds thereof in whosesoever hands they may come." But there were no proceeds to the decree, nor can there be any proceeds to such a decree. The decree declares that the paper propounded is not the last will and testament of the deceased and is not entitled to probate. The assets of the estate were not in the attorney's possession and there is nothing to which the lien could attach. *Matter of Cutting,* 169 N. Y. Supp. 205; *Matter of Rabell,* 175 App. Div. 345. There is no practicable way in which such a lien could

Surrogate's Court, New York County, May, 1920.    [Vol. 112.

be enforced.    The decree refusing probate cannot be set aside if the attorney is not paid.    As in *Matter of Nocton,* 162 N. Y. Supp. 215, it would be futile to proceed with an inquiry as to the value of the services when there is no way to enforce any lien.

I am of the opinion, therefore, that Judge Beckett had no lien in the contested probate proceeding for probate of the will of 1915, and that for his services in connection with said later instrument he had no lien in the proceeding in which was filed a petition for probate of the 1914 will.    The first defense pleaded in the answer must be sustained and the petition dismissed.

Decreed accordingly.