(92 Misc. Rep. 324)

## In re CONNELL'S WILL.

(Surrogate's Court, New York County.  November 2, 1915.)

1. WILLS ⬦⟹300—PROBATE—ACTIONS—EVIDENCE.

In a proceeding for the probate of a will, evidence *held* to show that the testatrix was domiciled in a foreign state.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 697; Dec. Dig. ⬦⟹300.]

2. EXECUTORS AND ADMINISTRATORS ⬦⟹518—WILLS ⬦⟹239—PROBATE—PROCEEDINGS.

An application for the probate of a foreign will and for revocation of ancillary letters is governed by the law in force at the time the application is filed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2299–2309; Dec. Dig. ⬦⟹518; Wills, Cent. Dig. § 570; Dec. Dig. ⬦⟹239.]

3. EXECUTORS AND ADMINISTRATORS ⬦⟹518—ANCILLARY LETTERS.

In 1911, when proceedings for the probate of a will were commenced, Code Civ. Proc. § 2695, provided that, where a will of personal property made by a nonresident has been admitted to probate within the foreign country where it was executed, the Surrogate's Court must, on proper application, issue ancillary letters; section 2696 provided for the issuance of such letters to the person entitled *to* the possession in the foreign country of the personal estate of the decedent; while sections 2698 and 2699 provided that the surrogate must ascertain whether there are any local creditors, who must be cited, unless they waive the issuance of citation, and that, upon return of the citation, the amount of debts shall be ascertained. *Held*, that ancillary letters could be granted only to the person entitled to the possession of the personal estate of the decedent in the domiciliary state.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2299–2309; Dec. Dig. ⬦⟹518.]

4. EXECUTORS AND ADMINISTRATORS ⬦⟹518—ANCILLARY LETTERS.

In such case the local next of kin are not entitled to notice, and so have no right to protest against the issuance of letters on the ground that the papers upon which they were granted did not strictly conform to Decedent Estate Law (Consol. Laws, c. 13) § 45, or were not properly authenticated.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2299–2309; Dec. Dig. ⬦⟹518.]

5. WILLS ⬦⟹2—PROBATE—WHAT LAW GOVERNS.

A resident of one country may make a will according to the law of another country in which he is temporarily domiciled, and that law will govern.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2; Dec. Dig. ⬦⟹2.]

In the matter of the application for the probate of the last will and testament of Elizabeth Connell, deceased.  Application denied.

Roger Foster, of New York City, for petitioner.

Geller, Rolston & Horan, of New York City, opposed.

FOWLER, S.  In accordance with the directions contained in my decision in August, 1911 (138 N. Y. Supp. 389), an order was entered appointing David B. Ogden, Esq., counselor at law, a referee to take

evidence upon the disputed question of decedent's last domicile, and to report the same to this court with his opinion. A commission was issued to take the testimony of witnesses in Canada, and such testimony is now attached to the referee's report.

[1] It appears that the learned referee took the testimony of witnesses who reside in this city and who were acquainted with the testatrix while she was a resident of this state. He has found that the decedent at the time of her death had her domicile in Canada. It seems to me, from the evidence, that his conclusion is correct. The facts upon which he bases his conclusion are about as follows:

The testatrix was born in Canada and lived there until she arrived at the age of maturity. This then was her domicile of origin. The evidence is not clear as to the date upon which she left Canada, but the record shows that in the year 1870 she opened an account in the Dry Dock Savings Institution in this city, and that she was engaged as a nurse in a hospital here in 1878. She married a resident of this state, and continued to reside here until August 15, 1908. Immediately prior to the latter date she lived in a furnished room in this city and was obliged to leave because the house at which she had lived was about to be torn down. She took her personal belongings and went to Canada in August, 1908, and remained there until June 26, 1910, the date of her death. In Canada she lived with her nephews and assisted in the housework. There is some evidence to the effect that she expressed her intention of residing in Canada during the remainder of her life and that she endeavored to make arrangements for the removal to that country of a tombstone she had erected in a cemetery in Brooklyn.

When this cause was on in this court before, I was under the impression that the Canadian will of the deceased was what is called "allographic," but it is not so. The will was what is known as a nuncupative or "notarial" will. It was made in Lower Canada in conformity with the law of the Province of Quebec. Ancillary letters were, after the death of Elizabeth Connell, issued out of this court by direction of my predecessor. The regularity of these ancillary letters is now challenged, and an original probate is sought by petitioner on the ground that the last domicile of Elizabeth Connell was in our country, and not in the Province of Quebec, where she died, and on the further ground that the Code in force did not authorize the issuance of ancillary letters to the Farmers' Loan & Trust Company on the Canadian document.

[2, 3] This proceeding was commenced in 1911, and its disposition, therefore, is to be governed by the provisions of the Code as they existed prior to the amendment effected by chapter 443 of the Laws of 1914. Section 2695 of that Code provided that:

"Where a will of personal property made by a nonresident has been admitted to probate within the foreign country, * * * where it was executed, or where the testator resided at the time of his death, the Surrogate's Court * . * * must, upon an application made as prescribed in this article, * * * issue thereupon ancillary letters testamentary."

Section 2698 provided that upon the presentation of a petition for such letters "the surrogate must ascertain * * * whether any

creditors or persons claiming to be creditors of the decedent reside within the state," and, if so, such creditors must be cited, unless they waive the issuance and service of citation. Section 2699 provided that, upon the return of the citation, "the surrogate must ascertain  *  *  *  the amount of debts due  *  *  *  from the decedent to residents of the state," and as a condition of awarding letters, the petitioner, or the person to whom the letters may be awarded, shall qualify by giving a bond for a sum not exceeding twice the amount of the debts due local creditors. Section 2696 provided that such ancillary letters shall be granted to the person "entitled to the possession in the foreign country of the personal estate of such decedent."

It is apparent, from these sections of the Code cited, that the only person entitled to ancillary letters in this state is the person entitled to the possession in the domiciliary state of the personal estate of the decedent. The person entitled to the personal property of the testatrix in the Province of Quebec, where she died and where her will was probated, was the executor designated in her will and who subsequently qualified in accordance with the laws of that province.

[4] Neither of the petitioners, as next of kin of the testatrix, is entitled to ancillary letters in this state. They were not entitled to notice of the application for ancillary letters, as the Code expressly provides that such notice shall only be given to creditors of the decedent in this state. As they were not entitled to notice at the time the application was made for ancillary letters in this state, and would have no right to intervene at that time for the purpose of preventing the issuance of such letters, they have no right now to apply for the revocation of the letters upon the ground that the papers upon which such letters were granted by this court did not strictly conform to the requirements of section 45 of the Decedent Estate Law. It is not necessary, perhaps, to decide more than this at the present time.

It is, however, asserted on behalf of the petitioner that the decree granting ancillary letters should be set aside because of defects in the authentication of the papers on which the ancillary letters were issued, in that the papers do not conform to section 2695, Code of Civil Procedure, and section 45, Decedent Estate Law, and, further, because they do not show that the will in question has been admitted to probate in the Dominion of Canada. Now, the sections of the Code in relation to ancillary letters are designed to protect the interests of local creditors and not the interests of the next of kin living in this country. The latter should resort to the courts of the last domicile of testatrix for the protection of their interests or the enforcement of their rights. It seems to me, therefore, that it is not necessary upon this application for the court to inquire into the sufficiency of the authentication of the records upon which the ancillary letters were heretofore granted by this court. But I will not rest here, as there seems to me to be some misapprehension not only about the object of our law in regard to authentication of probates, but also a misapprehension regarding the foreign law of wills and probate.

[5] A person, even if a resident of our country, may make a will according to the law of a temporary domicile, and the principle "locus regit actum" will then apply. In the French law and the law of the

Province of Quebec, founded on French law, there are three kinds of wills known as: holographic wills, wills par acte public, and "mystic wills." In this life information is sometimes obtained in very ordinary channels. There is a very good description of a mystic will in a charming French romance by André Theuriet, entitled "L'Oncle Scipion," not, I think, translated into English. The French romancers, like the English novelists, are very apt to make a recondite point of law the basis of their plots. Warren, it will be recalled, in the famous "Ten Thousand a Year," so familiar to our lawyers, made his romance turn on the mysteries of a base fee.

The testatrix here did not make a "mystic" will, but a will par acte public, sometimes called a "notarial will." In French law there are no proceedings precisely corresponding to our probate. A testamentary succession is said to be "ouverte" by the death of the testatrix. Then there must be a formal acceptation of the inheritance. All proceedings relating to the estate are conducted at the place of opening ("ouverture") of the succession, which determines what court has jurisdiction of disputes. A French will itself is lodged with the appropriate notary, who is a public functionary, charged with the duty of keeping last testaments. A notary is an officer of the civil law. In England he obtains his faculty from the Court of Faculties. The judge of the Provincial Courts of Canterbury and York is now, I believe, ex officio, Master of Faculties. The acceptation of the inheritance in French law is a very important act, and when duly given is quite equivalent, I think, to a probate or publication of the will in the custody of the notary.

It would be somewhat provincial for us to suppose that in a foreign country there can be found institutions precisely similar to our own. While there may be no such thing in a foreign country as a probate, nevertheless there is always some act which is equivalent. If this point were now necessarily before me here I should elaborate it. Meanwhile I am inclined to think that the papers on which the ancillary letters were issued were quite sufficient in form and substance. But this it is not now necessary to adjudicate, for the reasons before stated. Those reasons per se are sufficient to necessitate the denial of the application for the probate of the Canadian will of testatrix as well as the application for the revocation of the ancillary letters heretofore issued out of this court.

Settle decree accordingly.