In the Matter of the Petition of BURLOCK E. RABELL to Compel REBECCA A. D. WENDEL SWOPE and ELLA V. VON E. WENDEL to Render and Settle Their Accounts as Administratrices, etc., of AUGUSTA A. S. WENDEL, Deceased.

REBECCA A. D. WENDEL SWOPE and ELLA V. VON E. WENDEL, Individually and as Administratrices, etc., Appellants; BURLOCK E. RABELL, Respondent.

Second Department, November 24, 1916.

Executors and administrators — decedent's estate — petition by attorney of administratrices, who has been refused payment for services, to compel them to render and settle their accounts — "person interested in the estate or fund" within meaning of section 2727 of Code of Civil Procedure — attorney's lien — jurisdiction of surrogate to fix value of attorney's services.

Where administratrices have employed an attorney to represent them in procuring letters of administration, in adjusting the transfer tax and in attending to other matters of administration, and have refused to pay him for his services, he is not a "person interested in the estate or

fund" within the meaning of section 2727 of the Code of Civil Procedure and is not entitled to an accounting; but on his petition the surrogate may determine the value of his services.

Such an attorney does not have an attorney's lien on the assets of the estate or on the distributive shares of the administratrices who retained him.

MILLS, J., dissented in part.

APPEAL by Rebecca A. D. Wendel Swope and another, individually and as administratrices, from an order of the Surrogate's Court of the county of Westchester, entered in the office of the clerk of said Surrogate's Court on the 16th day of June, 1916, granting the petition of the respondent.

*Lewis L. Delafield* [*George Flint Warren, Jr.*, with him on the brief], for the appellants.

*Burlock E. Rabell*, for the respondent.

THOMAS, J.:

The appellants, two of the next of kin of the decedent, were, without opposition and at least by parity of right, appointed administratrices of the estate. Mr. Rabell, the respondent, who during the intestate's life had professional relations to her affairs, was retained by such persons to act as lawyer, and he did so, not only in procuring the letters, but also generally as to some matters pertaining to administration, among other things in adjusting the transfer tax. He presented a bill deemed by the representatives so considerable that they refused to pay it, whereupon he petitioned that they render and settle their accounts. Thereupon the order under review was made.

The respondent is not entitled to initiate such settlement unless he is a "person interested in the estate or fund," within the meaning of section 2727 of the Code of Civil Procedure. He asserts that he has such relation by reason of an attorney's lien on the distributive shares of the two individuals who retained him. The lien would assure his right to petition, but it must be sanctioned by section 475 of the Judiciary Law, which is: "From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches

to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever [*sic*] hands they may come." In *Matter of Heinsheimer* (214 N. Y. 361) it is stated with reference to the fund involved: "If the attorney got possession of the fund, he had a general lien. If he did not get possession, his lien was for the services that brought the fund into existence." In *Williams* v. *Ingersoll* (89 N. Y. 508, 517) Judge EARL wrote: "The theory upon which the lien is upheld is that the attorney has, by his skill and labor, obtained the judgment, and that hence he should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures." I would not take a narrow view of the productive effect of the services. It is true that a lawyer's efforts may result, literally, in transferring to the client money or property is in actions where damages are collected. But, on the other hand, he may merely effect the restoration or delivery of property as in actions of replevin. There he creates nothing, but restores or brings something into his client's possession. I will not divert the discussion to actions where a specific existing *res* is the subject-matter. Such are actions to remove cloud on title, to obtain injunctive relief and others that readily come to mind. Now, looking liberally at the question, what or whose part of the estate did the respondent's services bring into existence, produce or tend to produce? The State declared the devolution of the property, and several persons thereby became the beneficial owners of it. No one was withholding the property or disputing their right to it. But between their then status and their possession and enjoyment of the property stood the administration of the estate. That means that measures must be taken to establish and to discharge debts and public charges, to identify the next of kin and to gather and to deliver the net estate to them. For that certain papers must be drawn for proceedings before and by the surrogate. That required a lawyer. There was no representative of the estate to employ one. Hence, the appellants' next of kin did it. The result was that the appellants were appointed to take title to the personal property for the purpose of administration and to administer the estate. But so far the estate remained what it was without addition or

Second Department, November, 1916.            [Vol. 175.

lessening. The individual relation of each next of kin to it was unchanged. The two persons petitioning for appointment were not asking to enforce a cause of action, counterclaim or individual claim, except the claim to administer. The order appointing them was not a verdict, report, decision, judgment or final order that decided that *they* had property rights in the estate, except as incidentally for the purpose of the decision it was determined that they were of the next of kin and had right to letters. But the petition for acquisition of letters cannot be considered in isolation, but rather as the commencement of a proceeding that would remove impediment and deliver to the next of kin, one and all, their property. Every successive step, also, was necessarily taken for that one end, and was enabling for the reduction of the property to the possession of the next of kin with the full powers of ownership. Real property descended to the same persons. If the same two women commence an action for actual partition, the final purpose is in some respects the same as in proceedings for administration, viz., to give to each sole title to her separate share, although the heirs have title and possession of the land. But in neither instance would the property be caused to exist, but the personalty by administration becomes subject to full and unassociated use. There is, however, another difference that is fundamental and illustrates that in administration the lawyer has no lien on his employer's individual interest. In the partition case the lawyer would be employed to represent individuals for their personal interest, and in the administration of the personalty to represent the administrators in their official capacity and duties, owing no more allegiance to those who employed him as regards their personal interest than to the others of the next of kin in the same regard. Indeed, it would be censurable if the lawyer for the administrators should, under the guise of that employment, act for the special furtherance of some individual distributees to the neglect or harm of others, and it is not presumed that he so acts at all. It is true that two of the next of kin retained him and are deemed his paymasters. But employed him for what? To enforce their individual claim? That is impossible in law and ethics where there are other interests. The lawyer's relations and

duties are the same as if the persons liable to pay him had no distributive interest. Assume that the appellants were the executors of a will that conferred upon them a power beneficial to one of them, and the lawyer were employed to render services in administering the estate. The attorney would not have a lien on an individual interest of a grantee of the power because the execution of it was facilitated by his services to the estate. In the present case, something comes to the appellants individually, and so to the others, next of kin. But the appellants as individuals are entitled to the common benefits of the administration and do not on that account pledge specifically their shares from the necessity of employing counsel for the whole estate. But there is something more. The respondent does not pretend that in his comprehension of his duties he is the lawyer of the appellants as individuals. He does not by acts or description advertise that he is that. When he took part in fixing the transfer tax he did not do it for them as individuals but as administratrices; not for the protection of their interests, but to guard justly the whole estate. He may have drawn and presented the petition for letters as their individual lawyer, because there was no other relation possible, but he knew, as all knew, that upon their appointment all his services would relate to them as administratrices and that he would be paid out of the estate, and not out of the individual shares of the employers. He did it, not for their individual interests, but for those of all concerned. I cannot conceive of a holding that, in fixing the sum to be paid the lawyer of executors or administrators, the payment should be measured by the services rendered individually to the persons who employed him and their interest in the estate, and not by services devoted to the whole estate. If the lawyer sue those who retained him he would not assert that he was their individual attorney, acting to further their private and personal interest in securing their separate shares, which would be an avowal shocking to all legal and moral sense, but he would disclaim any private and personal allegiance to them and demand full payment for services in the settlement of the whole estate, services rendered in greatest good faith to all entitled to the

benefits of administration, without partialities for individuals. Indeed, I view with some apprehension the suggestion that the attorney for executors or administrators may be deemed to be acting in some individual way for the employers so as to have a lien on their shares. It is false in principle and presents a vicious and dangerous thought to the profession. A trustee must not favor his individual interests in an estate. No more may the lawyer who acts for him. The result reached is in accord with that of Surrogate COHALAN in *Estate of Nocton* (N. Y. L. J. Jan. 21, 1916). But it is urged that different decision was had in *Matter of Pieris* (82 App. Div. 466, 469; affd., 176 N. Y. 566) and *Matter of Wood* (170 App. Div. 533). In the first case Mr. Justice HIRSCHBERG significantly stated that the appointment of the administrator was to assert effectively a claim to money in a bank to which the client was entitled both as administratrix and as only next of kin, and of which she was made aware by the attorney. That is, he was employed by a person to get a fund for one entitled to act, and letters of administration were necessary evidences of title. Hence he got them. The justice, with discrimination, wrote: "The question presented  *  *  *  applies only to the case at hand, where the employment is to collect a specific fund and legal proceedings are conducted in aid of that purpose." In *Matter of Wood* (*supra*) the client was the sole legatee. Unless the will was probated, the statute would distribute the estate so that at least one other would share. It was a question of establishing the legatee's sole title through a will as against another resisting and claiming under the statute. The lawyer helped the proof of the will. The ownership of the estate followed. What under the statute would not be wholly the client's, became such. There the attorney retained established ownership in a fund and excluded all but the one he served. But does this lead to the conclusion that the respondent, as attorney for the administratrices, has an attorney's lien on the assets of the estate? He does not assert that, and I think that he does not have it. But it does lead to the conclusion that the surrogate, upon the attorney's petition, may ascertain the value of his services to the administratrices as such. The respondent was duly employed; he rendered

services of some value, and should be paid within a reasonable time. There is a large estate and no debts. The letters of administration were issued in July, 1912. The estate was substantially settled in 1913. The answer shows that the appellants do not intend to settle the estate upon formal accounting, but by division among the next of kin with resulting release to the appellants. What, then, becomes of the respondent's claim? It is answered that he can enforce collection against the appellants as individuals. It is a legal theory of which quite limited and exceptional use is made that the persons to whom letters are issued are primarily liable to the lawyer employed. It happens that in the present case they are enabled to pay the claim. But the question of the surrogate's jurisdiction to order payment from the estate is the same as if the appellants were insolvent. The individual can be compelled in an action at law to pay from his own property, if he has it. But the administrator usually has, even before the present statute, and that too by judicial sanction, ordered the lawyer paid from the estate, and the surrogate has approved or disapproved and appellate courts have been and are constantly asked to consider or to enforce surcharges, whereby representatives are enforced to make restitution to the estate for moneys paid upon their estimate of reasonable value later deemed unreasonable by the court. With such power so commonly exercised by the courts, it cannot fairly be said that for such services there is no obligation on the part of the estate which can be ascertained by the surrogate. Such proposition disputes daily experience in the courts. The very things done continuously and legally show that the law is that the estate should compensate and that the surrogate should fix the amount. If the administrator should die without paying the lawyer and leaving no property, the lawyer could apply to the surrogate for an audit and payment of his claim. He should not be met with what is little more than a fiction, that the estate is merely indemnity for the reasonable sum of the representative's reasonable outlay. If the property of the estate stands as indemnity for the sum paid by the representative, it means that the ultimate burden rests on the estate, and that the administrator is one empowered to disburse, and if he refuses

to pay and seeks to distribute the estate by private convention, the estate should not go free.   The estate is in the Surrogate's Court, and the refusal of the administratrices to pay the lawyer, whose services had been given to the estate, should not leave the surrogate helpless.   The appellants urge that the only avenue to the surrogate is through the representative.   If so, his inaction leaves an estate free, and if the representative be insolvent, the lawyer is unpaid — a view that too narrowly interprets the supervisory power of the court.   In 1914 was enacted section 2692 of the Code of Civil Procedure, that authorizes a representative to pay from the funds of the estate his legal and proper expenses of administration, and that " Such expenses and disbursements shall be set forth in his account when filed, and settled by the surrogate."   Undoubtedly the purpose is to sanction the practice of the representatives paying such expenses from the funds of the estate — a practice that results too often in error, confusion and litigation for representatives, which in itself is valid reason for leaving the determination, in the first instance, of the amount to the surrogate.   But the statute indicates that the Legislature intended, and it would be contrary to practice and decision to intend otherwise, that the property of an estate is appropriable for paying expenses of administration, and that the surrogate shall supervise the amount to be taken for that purpose.   In *Matter of Smith* (111 App. Div. 23, 29) it is said: " Primarily an executor personally and not the estate is liable for all contracts made by him in the execution of his trust.   Notwithstanding this rule, the necessary expenses of administering an estate may be regarded as a charge upon, although not a debt against the estate, and when the expenses incurred by an executor are by the court found to be necessary and proper in the administration of the estate they are payable from the estate."   If the representative has funds to pay, and, even for meritorious reasons, will not pay the whole demand and proposes to avoid a settlement out of court, there are ample facts to enable the surrogate to determine to what extent the estate shall be amenable for the debt and to direct payment.   This does not decide that the respondent is entitled to an accounting, but rather that at his instance the court shall decide what sum the representatives shall pay.   For

that respondent need not at present ask for an accounting. If the administratrices are directed to pay a sum, and, to protect themselves or for other reason, would have a final accounting, they are privileged to do that.

I suggest that the order for reference and for payment may not estop persons entitled to share in the estate unless cited. It is deemed best to reverse, without costs, the present order, and to remit the matter to the Surrogate's Court to the end that upon proper citation, by reference or otherwise, the amount payable from the estate for the petitioner's services be ascertained, to the end that the representatives may be ordered to pay the same.

JENKS, P. J., STAPLETON and PUTNAM, JJ., concurred; MILLS, J., concurred in the result, being of opinion that the petitioner has a lien upon the whole estate.

Order of the Surrogate's Court of Westchester county reversed, without costs, and matter remitted to said court for further proceedings, in accord with opinion. Order to be settled before Mr. Justice THOMAS.