Surrogate's Court, Saratoga County, February, 1917.    [Vol. 99.

## Matter of the Estate of F. AUGUSTUS HEINZE, Deceased.

(Surrogate's Court, Saratoga County, Febrary, 1917.)

Executors and administrators — accounting — when claim for legal services allowed — costs.

> Where an administratrix solely for the benefit of the estate and for its preservation has incurred expenses for counsel fees which could properly have been paid from the assets of the estate but for her removal from office on the ground that certain of her individual property claims might be antagonistic to those of the estate, the court, upon her petition for the judicial settlement of her account, which asked that said claim be examined, proved and that any amount allowed be directed to be paid out of the assets in the hands of the present administrator, has full power to do justice between the parties; and where the proof as to the nature and reasonable value of the services rendered by counsel is not disputed, and no one asks that the matter be held for further proof, the claim will be allowed, but any directions as to its priority and payment must await the final decree entered upon the judicial settlement of the accounts of the administrator.

APPLICATION to determine claim for services of attorney.

Hiram C. Todd, for Edgar T. Brackett, claimant.

S. A. McIntyre, for Lida M. Fleitmann.

James A. Leary, for Walter A. Fullerton, administrator.

Sullivan & Cromwell (Ralph Royall, of counsel), for Edwin Gould.

OSTRANDER, S. Decedent was a man reputed to be worth several millions. His property consisted largely

of mining stocks, properties and royalties from mines. He was also interested in a large sugar plantation in Texas. The mining properties were located in several states in the west, in Alaska, British Columbia, and in the Porcupine District of Canada. Much of his estate was represented by shares of holding corporations, formed under laws of various states, for the purpose of holding and easier dealing in shares and interests in other corporations in which he was interested. Through various complications many corporations and enterprises in which he was interested had, some time before his death, become financially embarrassed, and the greater part of his holdings was either involved in bankruptcy, reorganization or other liquidation proceedings or pledged as security for loans. Many loans were pressing for payment.

A judgment for nearly a million and a quarter dollars had just been recovered against him and required review by the appellate courts. In this situation he died November 4, 1914.

His estate had large potential value, which could be realized, if at all, only by most wise and careful management. The legal, financial and business problems confronting the estate were not only exceedingly complex, but required, in some cases, most immediate solution, since it was certain that his death would precipitate sales of his collaterals. The questions involved were subject to the laws of the courts of many jurisdictions. Pending litigations involved amounts running into millions and threatened the whole assets of the estate. His heir was a helpless infant and creditors required immediate protection through the estate. Such a situation required wise general plans and prompt action to protect the estate.

Mrs. Fleitmann, Heinze's sister, on the evening of

Surrogate's Court, Saratoga County, February, 1917.   [Vol. 99.

his death consulted Senator Brackett, who was already somewhat familiar with a part of his affairs.   Under his guidance she was appointed administratrix and proceeded with her duties.   Very valuable services were performed by him for her, but, before she was able to pay him from the funds of the estate, it was found that certain of her individual property claims might become antagonistic to those of the estate and she was removed from her office.   According to the usual practice she was restrained from paying out any funds, required to deliver the assets to her successor and to account.   She has filed her account, with a petition, praying settlement thereof.   This account states that a claim has been made upon her by Senator Brackett for legal services rendered as aforesaid.

Later, having been sued by Brackett, she filed a petition in the matter of her said accounting, praying that his said claim be examined, proved, and that any amount allowed be directed to be paid out of the assets in the hands of the present administrator.   Notice of a hearing of said matter was given to all who had appeared upon the accounting.

Edwin Gould, a creditor, appears specially and questions the jurisdiction of the court to determine this claim: (a) because it is against Mrs. Fleitmann individually, (b) because it is not against the present administrator, either individually or as administrator, (c) because the court has no power to pass upon it until it has been actually paid by her.

He also urges that an order to pay this claim cannot be made except by way of a final decree upon the accounting, and that, therefore, the claim cannot now be determined.

Considering this last objection first: This is comparable to the hearing of contested claims upon the

accounting, where determination of their validity is made and they are then held and marshaled for payment under the final decree according to their several priorities and to the extent of funds available for their payment. This is precisely the situation here. The examination of this claim is only a step in the accounting proceeding to determine how much the estate should be liable for these services.

We come then to the question of the power of the court to determine this claim before it has been paid by the administratrix who incurred it.

If there is no power in the court to determine such a claim in advance of its actual payment, then where an estate consists solely or principally of realty, if a representative, having no individual means, necessarily employing counsel at a reasonable expense to defend and preserve the estate, should be unable to borrow money on individual credit to pay counsel, and be displaced by death, resignation or removal, before the time for an accounting and sale of the realty to pay debts, etc., the estate would have received valuable services from counsel without any power in the court to reimburse him. Other contingencies can arise where hardship and wrong would result.

The estate has always been the ultimate fund for the payment of such claims and it is conceded to be so in this case. The court has always, finally, had to be arbiter, in case of dispute as to their amount, and this must be so here. Because the administrator was not the agent of the estate, but its owner, while in office, his contracts for such services bound him personally for the full contract price. But such bills were chargeable against the estate only to the extent of their reasonable value to the estate, such as the court should determine. This is the relief asked here — that the court shall

**230** MATTER OF HEINZE.

determine the value of these services to the estate — and that for such amount the estate shall be liable. The old practice gave the administrator no leave to pay such bills from the funds of the estate until his account was settled, but it generally winked at his transgression of the rule. The new statute (Code Civ. Pro. § 2692) expressly permits him to pay from the trust funds, and account later — thus facilitating the payment of such expenses from the estate, but retaining their reasonableness for determination before the action of the representative should become final. While the former practice, in theory, made no allowance to a representative for funeral and administration expenses, which he had not actually paid, the reason was apparent, he should not have credit for what he had not paid.

But in *Ferrin* v. *Myrick,* 41 N. Y. 315, where in an equitable case the Court of Appeals held that the man who furnished a grave stone could not, in an action at law, recover against the administrator, as such, upon a contract made by his predecessor for the stone, the opinion of the court (p. 325) contains this significant passage: '' It ought to be added, that in case of the fraud or insolvency of the executor, an equitable cause of action would probably be thereby created against the estate, which could be enforced in behalf of the creditor, and which would enable him to maintain a claim against the estate directly.''

In *Austin* v. *Munro,* 47 N. Y. 360, while holding that an action at law could not be maintained against the executors, as such, to recover for legal services rendered to the estate upon a contract of the executors to pay, because the executors were not authorized to bind the estate by executory contract, the court said at page 367: '' Whether, by proper allegations, upon an

amendment, it may be converted into an equitable action to reach funds in the hands of the defendants, the fruits of the litigation in which the services were rendered, or in the alternative for judgment against the defendants personally, may be a question for the pleader, but is not before this court."

These cases, while not entitled to weight as precedents, suggest that in some tribunal equity could reach assets of the estate in favor of one who had furnished property or services for which the estate should in good conscience be liable.

The court in *Matter of Smith,* 111 App. Div. 23; *Matter of Wood,* 170 id. 533, determined the value of the services of attorneys who had appeared for the representatives in administration of the estate, before payment by the representatives, and against their consent, upon the theory that the attorneys' lien for services under the statute must be fixed as a preliminary to settlement of the estate. *Matter of Rabell,* 175 App. Div. 345, was similar in the facts though the opinion does not indicate that stress was laid upon the question of enforcement of a lien. The Brackett services were by way of counsel and not as attorney of record, and may not, perhaps, be the subject of a lien.

In the case at bar the administratrix incurred expenses for counsel fees for the preservation of the estate. They do not appear to have been at all for her benefit but solely for the benefit of the estate. She had property of the estate which she could properly have applied to their payment had not the court by her removal taken the funds from her possession. As the evidence now stands putting upon her the burden of raising and carrying indefinitely from her own resources a large sum of money to pay this claim

which must ultimately be returned to her from the estate before determining its value to the estate would be unfair. At some time this court must fix the amount for which the estate shall be liable for these services. Under the peculiar circumstances of this case, it is not necessary that Mrs. Fleitmann shall have actually paid them. The Code (§ 2510) confers upon the court full equity jurisdiction to do justice between all the parties before it in this proceeding. This is limited (*Matter of Holzworth,* 166 App. Div. 150; 215 N. Y. 700) only by the restrictions contained in the latter paragraph of that section that " in the cases and in the manner prescribed by statute " it shall (subd. 3) settle the " accounts of executors, administrators," etc., and (subd. 4) " Enforce * * * the distribution of the estates of decedents." The statute (Code Civ. Pro. § 2692) does not prohibit, even by inference, the determination of an amount due counsel, which the representative does not ask to have allowed as a credit to her. Having been deprived of the fund with which her personal liability to counsel might have been paid or reduced, she has a substantial interest in having paid from that such sum as may be just.

She has given evidence of the nature and value of these services. No one has disputed this proof by a syllable of evidence. The case was rested by every party in interest upon this proof. No one has asked upon the trial to have the matter held for any further proof.

Considering among other things the difficulties confronting the administratrix, the apparent magnitude and complexity of the interest involved, and the high standing and experience of her counsel, I think the

claim presented is not unreasonable and should be allowed.

Directions as to its priority and payment must await the final decree upon this accounting.

Should subsequently discovered facts make payment of this claim inequitable and unjust, the changed situation can be cared for upon framing the final decree upon the accounting.

Decreed accordingly.