In the Matter of JOHN A. O'CONNOR, Deceased.

CHARLES A. COLLIN and Others, Copartners Doing Business as COLLIN, WELLS & HUGHES, Appellants; MARGARET T. O'CONNOR, as Administratrix, etc., Respondent.

First Department, April 13, 1917.

Attorney and client — lien of attorney — services rendered to estate in collecting assets — retaining lien — ascertainment of lien by surrogate.

Attorneys at law who have not only rendered services in procuring the appointment of an administratrix with the will annexed, but have also aided such administratrix in converting the assets of the estate into cash and who have received and hold in their possession the funds of the estate are entitled to a retaining lien thereon for the value of their services, which lien is distinguished from the statutory lien upon a cause of action.

The surrogate should determine and allow the reasonable value of the attorneys' services to the estate before compelling them to turn over the funds to the administratrix.

APPEAL by Charles A. Collin and others, attorneys, from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 9th day of February, 1917, requiring them to turn over to the respondent the sum of $600 assets of the estate in their possession.

*John L. Wells,* for the appellants.

*Charles M. Hall,* for the respondent.

DOWLING, J.:

The appellants were formerly the attorneys for Margaret T. O'Connor, administratrix of the estate of John A. O'Connor, deceased. As such attorneys, they rendered services in procuring the appointment of Mrs. O'Connor, first as temporary administratrix of her husband's estate and then as administratrix thereof with the will annexed, the executor named in said will being a non-resident. They procured a surety company to furnish the bond for the administratrix. They rendered further services in connection with the conversion of the assets of the estate into cash, such assets·consisting in part of

stocks and notes. They received from the sale of the stocks and the payment of the notes and other sources, in all $3,900.73, for which they accounted, showing a cash balance in their hands on November 4, 1916, of $2,042.40, which amount was transferred by the attorneys to the account of the administratrix, subject to the joint check of herself and the surety company. Included in the said account was a payment on October 26, 1916, to the attorneys of $600 for legal services. It is this payment which is questioned by the administratrix and it is this sum which she sought to have summarily directed to be paid over to her. The learned surrogate granted her application upon the authority of *Matter of Nocton* (162 N. Y. Supp. 215) and *Matter of Rabell* (175 App. Div. 345). But in neither of these cases was the attorney in actual possession of funds of the estate upon which he claimed a lien for services performed in collecting or recovering them. In the *Nocton* case the attorney was employed only to obtain letters of administration upon the estate and thereafter a different attorney was retained to represent the administratrix. The court held that the attorney was without relief under section 475 of the Judiciary Law (Consol. Laws, chap. 30; Laws of 1909, chap. 35), as there was no action or proceeding pending to which an attorney's charging lien could attach; that though the surrogate had power upon an accounting to allow a payment for legal services made by an executor or administrator to his attorney provided it was reasonable in amount and the services were necessary and proper in the administration of the estate,* still the liability to the attorney was personal upon the part of the executor or administrator, and an attorney who performed services for an executor or administrator has not a lien upon the general assets of the estate for the value of his services. In *Matter of Rabell* the Appellate Division, Second Department, held that an attorney acting for administrators in procuring letters of administration, attending to the adjustment of the transfer tax and other matters, had no lien for his services upon either the whole estate or the distributive shares of the individuals who retained

*See Code Civ. Proc. §§ 2692, 2747, as amd. by Laws of 1914, chap. 443. —[REP.

him. But that proceeding was also based upon the charging lien provided for by section 475 of the Judiciary Law, and no claim was made that any part of the funds of the estate had passed into the possession of the attorney. The court, however, remitted the matter to the Surrogate's Court that it might ascertain the amount payable from the estate for the attorney's services. I am of the opinion that this proceeding falls within the rule laid down in *Matter of Knapp* (85 N. Y. 284), wherein Judge DANFORTH, after saying (p. 293) that "the general proposition that an attorney has a lien for his costs and charges upon deeds or papers, or upon moneys received by him on his client's behalf in the course of his employment, is not doubted, nor does it stand upon questionable foundations. It comes to us *super antiquas vias*," proceeds to discuss the decisions declaring such rule, beginning with *Ex parte Bush* (7 Vin. Abr. 74), decided in 1734, and finally says: "Enough has been said to show that the attorney has such a right of lien; the right, therefore, to retain and possess the fund until the lien is satisfied; and the extent of that lien is, as assumed by the General Term, 'compensation for his professional services rendered and for disbursements expended by him.'" And in *Matter of Heinsheimer* (214 N. Y. 361) Judge CARDOZO said (p. 364): "At common law the liens available to an attorney were of two kinds. There was a retaining lien on all papers, securities or moneys belonging to his client which came into his possession in the course of his professional employment. (*Bowling Green Savings Bank* v. *Todd*, 52 N. Y. 489; *Ward* v. *Craig*, 87 N. Y. 550, 560; *Goodrich* v. *McDonald*, 112 N. Y. 157, 163.) This was a general lien for the entire balance of account. It was dependent, however, upon possession. There was also a charging lien, which bound a judgment recovered through the attorney's efforts. This lien was not dependent on possession. The very reason for its existence was to save the attorney's rights where he had been unable to get possession. 'It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.' * * * If the attorney got

possession of the fund, he had a general lien. If he did not get possession, his lien was for the services that brought the fund into existence. This charging lien still exists under our statutes. It has been enlarged to the extent that it now attaches to a cause of action even before judgment. 'From the commencement of an action or special proceeding' the attorney now has a lien 'upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come.' (Judiciary Law, Cons. Laws, ch. 30, sec. 475.) Except as thus changed the charging lien is to-day what it was at common law."

The order appealed from will, therefore, be reversed, with ten dollars costs and disbursements, and the matter remitted to the surrogate with instructions to determine the reasonable value of the appellants' services to the estate, for which they they have a lien upon the sum of $600 still remaining in their hands.

CLARKE, P. J., SCOTT, SMITH and DAVIS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and matter remitted to the surrogate as directed in opinion. Order to be settled on notice.