In the Matter of the Judicial Settlement of the Account of the FARMERS' LOAN AND TRUST COMPANY, Appellant, as Ancillary Executor, etc., of ELIZABETH CONNELL, Deceased.

In the Matter of the Petition of ROGER FOSTER, Respondent.

First Department, April 29, 1921.

Executors and administrators — claim by attorney for services performed at request of temporary administratrix which resulted in no advantage to estate — part of services performed after appointment of ancillary executor — Surrogate's Court does not have jurisdiction to pass on claim — attorney does not have lien.

An attorney who was employed by a temporary administratrix to collect certain moneys has no claim against the estate for services, which resulted in no advantage to it, and which were performed after the issuance of ancillary letters and before said letters were revoked, nor for services rendered after the order revoking said letters was reversed on appeal.

Furthermore, the Surrogate's Court has no jurisdiction of a proceeding instituted by an attorney to compel the ancillary executor to pay to the attorney out of the assets of the estate the value of services rendered by him for the temporary administratrix.

The proceeding cannot be maintained upon the theory that the attorney has a lien upon the estate and that the surrogate has power to determine the amount thereof, where the attorney collected nothing in the actions commenced by him which were halted before they were brought to trial.

APPEAL by the Farmers' Loan and Trust Company, as ancillary executor, from an order of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 29th day of September, 1920, directing it to pay to the petitioner, Roger Foster, out of the assets of said estate, the sum of $952.18, which together with his costs and disbursements constitutes the amount claimed to be due to him for legal services rendered at the request of one Catherine Kirk Overlander, who at one time was the temporary administratrix of the estate.

*Charles Angulo* of counsel [*Geller, Rolston & Horan*, attorneys], for the appellant.

*Roger Foster*, for the respondent.

GREENBAUM, J.:

Most of the facts connected with the present litigation are detailed in the opinion of Mr. Justice SMITH in *Matter of McCaffrey* (188 App. Div. 772). For the purpose of this appeal it is only necessary to give a chronological statement of the various proceedings in Canada and in this State involving appointments of the executor in Canada, and of the ancillary executor and of a temporary administratrix in this State.

Elizabeth Connell died in 1910, leaving what in Canada is called a notarial will in which she designated Thomas Kirk of Montreal her executor. The will was filed in court, the effect of which under the laws of Canada was to entitle him to exercise the duties of executor.

Subsequently the Farmers' Loan and Trust Company was appointed an ancillary executor. On March 11, 1911, Elizabeth Craig, one of the next of kin of the decedent, petitioned the surrogate of New York county asking for probate of the will upon the ground that the deceased was a resident of New York county and had personal property in the city of New York.

On May 29, 1911, another of the next of kin, a Mrs. Barrows, also presented a petition to the surrogate asking that the ancillary letters issued to the trust company be set aside, claiming, among other things, that the decedent was a resident of New York county. The surrogate dismissed both proceedings, and upon appeal to this court the orders of dismissal were affirmed and upon appeal to the Court of Appeals the orders of this court were reversed. (See *Matter of Connell*, 92 Misc. Rep. 324; 175 App. Div. 986; 221 N. Y. 190.)

The Court of Appeals did not reverse the conclusions as to decedent's non-residence here, which both the Surrogate's Court and this court had found. The reversal was solely based upon the circumstance that the first ancillary letters were granted not upon the probate of the will by a court but merely upon a formal filing of the will. The Court of Appeals held that such a filing was not a probate of the will within the meaning of our Code.

Thereafter application for final probate of the will was made to the Superior Court of the Province of Quebec, whereupon a decree of probate was duly entered.

On January 3, 1918, the Surrogate's Court of New York county issued temporary letters of administration to one Catherine Kirk Overlander, who thereafter and on January 7, 1918, duly qualified upon filing a bond in the penalty of $13,000.

On May 23, 1918, the Farmers' Loan and Trust Company obtained second ancillary letters. On July 12, 1918, these ancillary letters were revoked by order of the Surrogate's Court, but on July 3, 1919, the order was reversed on appeal by this court (188 App. Div. 772).

On July 2, 1918, Catherine Kirk Overlander, as temporary administratrix, appointed Roger Foster, the petitioner, to collect from the East River Savings Institution and the Bowery Savings Bank of New York moneys alleged to be on deposit in those banks belonging to the estate and aggregating about $8,900, which in fact had been withdrawn from those banks by the Canadian executor in 1910.

Pursuant to his retainer, the petitioner brought actions against the two banks respectively in the name of the temporary administratrix. In connection with these actions, the attorney performed services commencing July 2, 1918, and continuing up to November 13, 1919.

From the bill of particulars submitted upon the reference directed by the surrogate to pass upon petitioner's claim, it appears that five items of service in each of the cases were rendered before July 12, 1918, the date when the ancillary letters to the trust company were revoked by the surrogate, and that about twenty items in each case refer to services performed after July 3, 1919, the date when the order revoking the ancillary letters was reversed. In other words, while the permanent ancillary letters were in force, the petitioner performed services for the temporary administratrix involving in both actions forty-nine or fifty items out of a total of one hundred during a period when his client Mrs. Overlander's office of administratrix was *functus officio*.

It has been held that where permanent letters are issued, formal revocation of temporary letters is unnecessary, inasmuch as the issue of permanent letters in itself effects the retirement of the temporary administrator and discontinuance of his administration. (*Matter of Neil*, 184 App. Div. 507.)

In *Matter of Durban* (175 App. Div. 688, 689) the court said: " Section 2624 of the Code of Civil Procedure, to the effect that a decree of probate must revoke former letters of administration, is only declaratory. If the probate decree should not say that the temporary letters are revoked, it is nevertheless plain that such temporary letters have been superseded."

Since about one-half of Foster's services were performed during a period of time when his client was not administratrix, it would seem to follow that for these services which resulted in no advantage to the estate, he can base no claim against it.

But independently of the foregoing considerations the Surrogate's Court had no jurisdiction to pass upon the claim of the petitioner in this proceeding.

In *Matter of Hoyt* (103 Misc. Rep. 614, 616) the court said: " A surrogate possesses no jurisdiction not referable to some statute." In the case of *Hall* v. *Dusenbury* (38 Hun, 125) it was said that former sections 2717 and 2718 (afterwards section 2722 and now section 2687) of the Code of Civil Procedure * were " not intended  *  *  * to afford relief to any persons as creditors, except those to whom the decedent was indebted in his lifetime." In *Matter of Hyatt* (80 Misc. Rep. 466, 467) it was said: " The surrogate has no jurisdiction to order the payment of a claim created by an executor. His jurisdiction is only as to claims against the deceased." The same view was held in *Bulkley* v. *Staats* (4 Redf. 524). (See, also, 2 Heaton Surr. 1211, 1212; Jessup Redf. Surr. 1027; *Matter of Mahoney*, 37 Misc. Rep. 472, 474.)

The petitioner, however, claims that his proceeding was brought upon the theory that he had a lien upon the estate and that the surrogate has power to determine the amount thereof.

In *Matter of Rabell* (175 App. Div. 345) the court stated that the petitioner had no lien on the general assets of the estate for the value of his services rendered in the procurement of letters of administration and with respect to matters affecting the general administration of the estate. The court, however, held that under section 2692 of the Code of Civil Procedure,

---

* See Laws of 1880, chap. 178; Laws of 1893, chap. 686; Laws of 1911, chap. 434; Laws of 1914, chap. 443.— [Rep.

which authorizes the payment of proper expenses of administration and that such expenses and disbursements shall be set forth in the account filed by the legal representatives and settled by the surrogate, the proper procedure would be to remit the matter to the surrogate to determine the amount for which the estate was liable for petitioner's service of the administration.

In *Matter of O'Connor* (177 App. Div. 616) this court reversed an order of the Surrogate's Court which required the former attorneys of the estate to turn over to the respondent the sum of $600, assets of the estate in their possession. The attorneys had rendered services in procuring the appointment of Mrs. O'Connor first as temporary administratrix and then as administratrix of the estate and additional services in converting the assets of the estate into cash. In accounting for the cash proceeds the sum of $600 was deducted from the total amount received in payment of their fees. This court held that the attorneys had a lien upon the funds which came into their possession and remitted the matter to the surrogate with instructions to determine the reasonable value of the petitioner's services.

But it here appears that the petitioner has collected nothing in the actions which he brought and which were halted before they were brought to trial. His lien, if he has any, would attach only to papers in his possession in the actions for which he was specifically retained. There were no services rendered by him which have inured to the benefit of the estate, and besides, as shown, a portion of his services was rendered when his client had no standing before the court.

The order of the Surrogate's Court appealed from operates in effect as a judgment against the estate, which it had no power to grant. The order is reversed, with ten dollars costs and disbursements, and the proceeding is dismissed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and proceeding dismissed, with costs.