In the Matter of the Estate of FREDERICK F. PROCTOR, Deceased.

CITY BANK FARMERS TRUST COMPANY, as Executor of FREDERICK F. PROCTOR, Deceased, et al., Appellants; CHARLES L. KINGSLEY, Respondent.

(Argued March 13, 1935; decided April 16, 1935.)

110

*Charles Angulo* and *Benjamin Nassau* for appellants.

*Robert P. Smith* for respondent.

FINCH, J. This proceeding was instituted pursuant to section 231-a of the Surrogate's Court Act, to fix the compensation of the petitioner for services rendered the estate of Frederick F. Proctor. The City Bank Farmers Trust Company is the sole executor of the estate and there are five trustees, including Georgena Mills Proctor, the widow of the testator. On September 4, 1929, shortly before the death of her husband, Mrs. Proctor employed the petitioner Charles L. Kingsley as her personal attorney, and he continued in such employ until June 1, 1931. After the death of her husband, Mrs. Proctor asked him to take care of certain matters for her in connection with the estate.

The testimony of Mrs. Proctor is that his arrangement was that he should act as her attorney on the basis of an annual retainer of $1,000 for all services rendered at her request, and his testimony is that in addition to the annual retainer he told her that he would expect to obtain an allowance from the court at the time of the accounting. In March, 1931, Mr. Kingsley in addition to the annual retainer obtained an allowance of $3,500 from the surrogate for services rendered by him in regard to the construction of Mr. Proctor's will. At that time she was in Florida. He testified that soon after her return he told her of what had taken place before the Surrogate and of the allowances made by the Surrogate and of his proposed bill against the estate and that she consented thereto.

She testified that when she learned of this allowance she told him that he was not entitled to it as he was employed as her personal attorney. Later the petitioner sent a bill to the estate in the sum of $12,000 for services rendered for the benefit thereof, and shortly thereafter she terminated his employment. He wrote the attorneys for the estate, as follows:

" I do not claim that I was retained as attorney or counsel by the Trust Company, either in its capacity as Executor or as Trustee of the said estate.

" The services rendered, as set forth in the bill, were of benefit to the entire estate."

The matter remained dormant until December, 1931, when Mr. Kingsley sent Mrs. Proctor a bill for $550, covering the *pro rata* part of his annual retainer to June, the time when his employment ended. Mrs. Proctor refused to pay, on the ground that he had no right to the allowance and therefore had already been overpaid. Negotiations between Mrs. Proctor and Mr. Kingsley were commenced and culminated in an exchange of general releases between the two. The release signed by the petitioner stated that in return for $550 and Mrs. Proctor's release he released and discharged " said Georgena M. Proctor, individually and as a Trustee under the Last Will and Testament of Frederick F. Proctor."

The petitioner subsequently commenced this proceeding against the estate for services rendered. The executor did not deny that the petitioner rendered legal services beneficial to the estate but relied largely upon the release as a bar to the proceeding. The Surrogate held that the general release did not release the estate and that under section 231-a of the Surrogate's Court Act the petitioner was entitled to $7,500. The Appellate Division affirmed, two justices dissenting.

The decision of the lower courts can only be upheld if it is found that the petitioner's release of Mrs. Proctor, as a trustee and as an individual, did not bar an action

against the estate. Although an estate is generally spoken of as though it were a separate entity, as a matter of law it has no existence apart from that of its legal representatives. This court said, in *Whiting* v. *Hudson Trust Co.* (234 N. Y. 394, at p. 407): " It is only a form of words when we speak of him [the trustee] as the representative of an ' estate.' The ' estate ' had no separate existence. It was not a legal person. The only person was the trustee." Mrs. Proctor, as trustee, had the power to bind the trust estate (*Jessup* v. *Smith*, 223 N. Y. 203), and it necessarily follows that she had the power to procure the discharge of that obligation. The instrument releasing any claim against her, as trustee, therefore, exonerated the estate.

Section 231-a, as far as it is pertinent, reads as follows: " § 231-a. Compensation of attorneys. At any time during the administration of an estate, and irrespective of the pendency of a particular proceeding, the surrogate shall have power to hear an application for and to fix and determine the compensation of an attorney for services rendered to an estate or to its representative * * *.

" Such proceeding shall be instituted by petition of a representative of the estate * * *. Notice of the application shall be given in such manner as the surrogate may direct. The surrogate may direct payment therefor from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein."

A brief reference to the historical development of the practice embodied in section 231-a is material. An attorney's claim for compensation from a trust estate is derived through the representative, thereof. Originally a legal representative of an estate was required to pay his attorney's compensation from his individual funds. Thereupon he had a right of reimbursement from the estate on the settlement of his account to the extent that the payment was found to be reasonable and necessary.

(*Jessup* v. *Smith, supra;* *Matter of Gilman,* 251 N. Y. 265, at p. 271.)

The procedure was simplified in 1914 by the revision of the Code of Civil Procedure to include a provision authorizing the legal representative to pay his attorney's compensation and other administration expenses, in the first instance, from the funds of the estate. (Code Civ. Proc. § 2692, now Surrogate's Court Act, § 222.) If the representative, however, refused to make payment, attorneys generally brought an action at law against the client in his individual capacity. In 1916 it was held that if the representative refused to pay his attorney's compensation the Surrogate's Court had jurisdiction to fix such compensation and direct its payment from the estate in a special proceeding instituted for that purpose. (*Matter of Rabell,* 175 App. Div. 345.) Some doubt arose as to the rule declared in the *Rabell* case, by reason of the later decision in *Matter of Connell* (196 App. Div. 639.) The *Connell* case was distinguished by the Surrogate's Court of New York county in *Matter of Shipman* (116 Misc. Rep. 405; affd., 200 App. Div. 896; affd., 234 N. Y. 499.) At the session of the Legislature following the affirmance of the *Shipman* case by this court section 231-a of the Surrogate's Court Act was enacted. Disputes between representatives of estates and their attorneys are, therefore, now governed by section 231-a which embodies the rule laid down in the *Rabell* and *Shipman* cases. (*Matter of O'Brien,* 146 Misc. Rep. 556; *Matter of Parsons,* 121 Misc. Rep. 747; affd., 208 App. Div. 769; *Matter of Matheson,* 265 N. Y. 81, 85; 2 Jessup on Law and Practice in Surrogates' Courts in State of New York [1930], § 1174.) Statutory sanction was thus given to the procedural development, but in no way was there a change in the nature of the attorney's claim for compensation. The claim is still derived through the representative and the execution of a valid release to the trustee in his repre-

sentative capacity extinguishes all rights against the estate.

It is unnecessary to consider the question of whether the release is ambiguous, since the petitioner objected to the admission of parol evidence concerning the meaning of the terms employed.

Nor may the petitioner rest his claim on the " thirty-third " clause of the will. That clause provides that the Trustees shall determine " any and all matters as to which any doubt, difficulty or question may arise in relation to any of the trusts created * * *." This would not seem to be intended to cover the claim of the petitioner. Even if it could be so construed, that would not alter the fact that the claim is now barred, since it was derived through the trustee and the petitioner has released the source of his claim.

For the foregoing reasons, the orders should be reversed and the petition denied, with costs payable out of the estate.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Orders reversed, etc.